# Pettus *v.* McKinney.

*Bill in Equity by Widow; for Allotment of Dower, with Account of Rents and Profits; Cross-Bill to revive and enforce Decree for Purchase-Money as Lien on Land.*

1. *Loan of money to pay purchase-money of land; rights of lender, as against purchaser's widow.*—A person who lends or advances money to pay the-purchase-money for lands, or to pay a decree which the vendor has obtained subjecting the land to sale in satisfaction of his lien, and who takes a mortgage or deed of trust on the lands to secure the repayment of the money, can not claim to be subrogated to the vendor's lien on the land, nor to have the decree revived and enforced in his favor; and the wife of the purchaser not joining with her husband in the execution of the mortgage or deed of trust, her right to dower in the lands is superior to the rights and equities of the lender.

2. *Merger of parol stipulations in writing.*—When a contract is reduced to writing, executed by one party and accepted by the other, the writing becomes, in the absence of fraud or mistake, the sole memorial and expositor of the terms of the contract, and all prior verbal stipulations are merged in it.

APPEAL from the Chancery Court of Limestone.

Heard before the Hon. THOMAS COBBS.

This appeal was sued out from a decree of the chancellor sustaining a demurrer to a cross-bill, which was filed by Joseph A. Pettus, individually and as administrator of the estate of H. J. Cartwright, deceased, together with M. T. Cartwright, against Mrs. Sarah A. McKinney, the widow of James H. McKinney, deceased, together with the children and heirs of said McKinney, and the heirs at law of William E. Eddins, deceased. The original bill in the cause is not set out in the transcript, and the only averment of the cross-bill, as to its allegations, purpose and prayer, is in these words: "In said original cause, said Sarah A. McKinney therein seeks to have dower and homestead, and the incidental rents and profits, allowed her in certain lands, hereinafter described; and said Pettus and M. T. Cartwright deny and dispute her claims on various grounds." "The facts and circumstances connected with said land and claim," as the cross-bill further alleged, so far as material to an understanding of the points decided by this court, are these: In February, 1861, James H. McKinney bought of W. E. Eddins two tracts of land, known respectively as the "Burt place" and the "Stewart place," paying part of the purchase-money in cash, and executing his two promissory

notes for the residue, payable respectively two and three years after date, with interest; receiving from said Eddins his bond, conditioned to make title "by the last day of the present year, 1861," and entering into possession under the contract. These notes, not being paid at maturity, were afterwards transferred by said Eddins to Richard B. Eagin, who, in July, 1867, filed a bill in equity against said McKinney, in the Chancery Court of Limestone, to subject the lands to their payment; and he obtained a decree, ordering a sale of the lands by the register, unless the amount due on the notes was paid on or before the 1st November, 1868. The money not being paid by the day specified, the register advertised the lands for sale, under the decree, on the 7th December, 1868; and on that day, before the sale, as the cross-bill alleged, "said James H. McKinney went to Andrew C. Legg, and begged and besought him to advance the amount of said decree, and thereby prevent the sale of said lands, and promised to give him, and that he should have, a valid lien, mortgage, or deed of trust on said lands, if he would thus aid him, said McKinney. Thereupon, said Legg advanced the amount of said decree, and the costs of said suit, to the said McKinney, though his solicitor; and at the same time, and in accordance with said promises of said McKinney previously made, took from said McKinney a deed of trust on said lands to secure the same. In consequence of said promises, said advance, and said deed of trust, the register stopped his proceedings to sell said land; and said decree stands to this day, unsatisfied, unreceipted, and unreversed."

The deed of trust, a copy of which was made an exhibit to the cross-bill, recites that "the party of the second part [A. E. Legg] has this day advanced to the party of the first part [Jas. H. McKinney] the sum of $610.07 to secure his land from sale, it being agreed, as part of the consideration, and as an inducement for the said party of the second part to advance said sum above specified, that the said party of the first part would convey the property hereinafter mentioned to H. J. Cartwright, as trustee, to secure the same;" conveys the lands, including both places, to said Cartwright as trustee, with power of sale if default should be made in the repayment of the money "on or before twelve months after the making of this deed;" is signed by said McKinney, Legg, and Cartwright, attested by two witnesses, and filed for record in the Probate Court on the 28th December, 1868. In February, 1870, as the cross-bill further alleged, "said Legg, for value, assigned and transferred said deed of trust, with all his rights thereunder, to said H. J. Cartwright," the trustee therein named. Cartwright died, intestate, in May, 1871, and letters of administration on his estate were duly granted to said J. A. Pettus, who

was still acting as administrator when the cross-bill was filed. In January, 1873, said administrator sold the lands, under the power contained in the deed of trust; M. T. Cartwright, who joined with him as complainant in the cross-bill, becoming the purchaser, at the price of $500, and receiving a conveyance from the administrator. "Said Jas. H. McKinney at once voluntarily surrendered the possession of said land to said M. T. Cartwright, rented from him the portion of said land known as the 'Burt place,' and moved out from the portion of said land known as the 'Stewart place,' a day or two before he died, February 18th, 1873." After the death of said McKinney, his two grown sons "fulfilled his contract of lease of the said 'Burt place,' which was for the balance of the year 1873; while Mrs. Sarah A. McKinney, his widow, immediately after his death, "took what personal property of his estate she wanted, expressed herself satisfied with her share of his estate thus taken, and voluntarily left and abandoned said land, with no purpose ever to return thereto; she established her home elsewhere, and did not in any manner intimate or indicate that she claimed dower or homestead in said lands, until more than one year afterwards," when she filed her petition in the Probate Court, asking an allotment of homestead in the land. Her right of homestead was contested by said Pettus as administrator, who brought the case to this court by appeal, but his appeal was dismissed.—*Pettus v. McKinney*, 56 Ala. 41.

On the 12th February, 1873, a few days before his death, said James H. McKinney, "for value, sold and conveyed his equity or right of redemption in said lands to his adult son, James D. McKinney, who, on 21st February, 1873, for value, sold the same to said Pettus; and soon after said Pettus thus acquired said equity or right of redemption, he paid said M. T. Cartwright the $500 he paid for said land, with ten per cent. thereon, and took from him a deed to said land, which is made an exhibit to this bill. Said Sarah A. McKinney knew of both of said transactions as to said equity or right of redemption, was present at the first one, and made no objection to either. There were two separate and distinct sets of houses and dwelling-places on said land, each adapted to and used as a homestead, one on the 'Burt place,' and one on the 'Stewart place.' When said deed of trust was executed, said James H. McKinney lived with his family at and on the 'Stewart place;' but afterwards, and shortly before his death, left and abandoned said place with his family, and the eighty acres of land on which he then resided, and moved on to the 'Burt place,' where he thenceforth lived as the tenant of said Cartwright."

On these allegations, the cross-bill prayed, "that said debt mentioned in said deed of trust be held and declared a pur-

chase-money debt for said land, precluding dower and home-stead therein as to said Sarah A. McKinney; that said previous promise and agreement of said James H. McKinney, that said Legg should have a good and valid claim and lien on said land, in consideration of the advance of said money to said Fagin, be effectuated and enforced in favor of said Pettus; that the lien for the purchase-money of said land, and the said decree therefor in favor of said Eddins and said Eagin be revived in favor of said Pettus, and declared superior to the claim of dower and homestead by said Sarah A. McKinney; that said proceedings in said Probate Court, for the allotment of home-stead to said Sarah A., be enjoined; and said Sarah A. be de-clared estopped from claiming homestead in said land; that all clouds on the title of said Pettus to said land be removed, and whatever title to said land there may be in any of the defend-ants be divested out of them by the decree of the court, and declared vested in said Pettus."

Mrs. McKinney filed a demurrer to this cross-bill, assigning ten special grounds of demurrer, and also moved to dismiss it for want of equity. The chancellor sustained the demurrer and the motion, and dismissed the cross-bill; and his decree is now assigned as error.

McCLELLAN & McCLELLAN, for appellants.—1. Under the facts stated, an equitable lien on the land was created in favor of A. C. Legg, which a court of equity will enforce in his favor, or in favor of his assignees, against the husband, and against his privies in blood or estate.—Jones on Chat. Mortgages, § 10; 74 N. Y. 348; 35 Ala. 131; 24 Ala. 37; 1 Speer's (S. C.) Eq. 413; 2 Dess. Eq. 582. This principle will be applied to this agreement, even if the deed of trust should be held void. 1 Jones Mort. 168, 169. The husband had the right to make this agreement, regardless of the wife, because the lien for the purchase-money was superior to any right she could have.—40 Ala. 538; Thompson on Homestead, 331, 334, 342–4, 365; 1 Brick. Dig. 613, § 22.

2. The wife's signature to the deed was not essential to its validity. When the purchase-money is advanced by a third person, to whom the vendee simultaneously gives a mortgage or deed of trust on the land, the right of such mortgagee, or of those holding under him, is superior to any claim of dower on the part of the vendee's widow.—*Boynton v. Sawyer*, 35 Ala. 497; *Gillespie v. Somerville*, 3 Stew. & P. 447; *Brooks v. Woods*, 40 Ala. 538; *Eslava v. Lepretre*, 21 Ala. 504; 14 Ala. 371; 62 Ala. 526; *Crabb v. Pratt*, 15 Ala. 843; *Edmondson v. Welsh*, 27 Ala. 578; 1 Jones Mort. 464, 466, 527–30; 2 *Ib.* 927, 944–5; 4 Wait's Ac. & Def. 563–4; 6 Cowen, 316; 1 Bar-

bour, 399; 1 Paige, 192; 14 Maine, 299; 14 Peters, 21; 7 Halst. 22; 2 McCord, 54; 4 Mass. 566; 15 Johns. 458; 1 Cowen, 560; 14 Mass. 351; 27 Maine, 11; 4 Leigh, 30; 10 N. H. 500; 1 Bay, 312; 13 Me. 489; 45 Me. 493; 1 Bish. M. W. 326–7; Co. Litt. 31; Thompson on Homestead, 331–61; Central Law Journal, April, 1881, p. 330; same, October 14, 1881, p. 298; same, November 11th, 1881, p. 379. The law as to homestead rights is the same.—Thomp. on Homestead, 333–43, 361–2; 1 Jones Mort. 464-6; 45 Geo. 483; 5 Nev. 233; 37 Ill. 438; 20 Ill. 53; 2 Allen, Mass. 390; 14 Mass. 351; 51 N. H. 448; 51 Ill. 500; 8 Cal. 271; 10 Cal. 380; 16 Cal. 156, 181; 7 Iowa, 60; 20 N. Y. 412; 29 Ark. 591; 44 Barb. 232; 1 Sandf. N. Y. 76.

3. What is said in *Pettus v. McKinney*, 56 Ala. 41, against this unbroken array of authorities, is mere *dictum*, the appeal having been dismissed for want of jurisdiction. That proceeding, too, was at law, where form is regarded; while this is in equity, where the substance only is looked to. In *Chapman v. Abrams*, 61 Ala. 108, the deed to the vendee was executed three months before the mortgage was made to the person who paid the purchase-money.

4. When the husband died, the act of February 8th, 1872, was in force; and that act was repealed by the act of April 23d, 1873, which contained no saving clause; thus leaving the right of homestead dependent on the constitution of 1868, which gives a homestead only against debts contracted since its adoption. Legg's debt being only an extention or renewal of the original debt, which was contracted in 1861, no homestead right can be asserted against it.—Thompson on Homestead, 359–60, 311–16; 37 Ill. 438; 51 N. H. 448; 42 N. H. 43; 4 Bush, Ky. 379; 22 Gratt. 266; 10 Allen, Mass. 146; 17 *Ib.* 145; 15 Wall. 610; 67 N. C. 393.

5. If the deed of trust is defective, or inoperative, the original lien or incumbrance, which was discharged by the money advanced by Legg, will be revived in his favor, and he or his assignees will be subrogated to the rights of the original vendor.—1 Jones Mort. 208, 874–85, 966–71; 529–30, 205–07; 2 *Ib.* 966; 62 Ala. 526; 57 Ala. 432; Sheldon on Subr. 8, 19, 20, 38.

6. When the deed of trust was executed, the husband resided on the "Stewart place," and occupied it as his residence; and if the deed be invalid as an alienation of that place, for want of the wife's signature, it is certainly valid as to the other lands.—55 Ala. 344. But he afterwards abandoned and surrendered the possession of that place, and was residing on the "Burt place" at the time of his death; and if any right of homestead attached to that place, it was subsequent and inferior

[Pettus v. McKinney.]

to the deed of trust. His widow, then, can not claim a homestead in either place: not in the "Stewart place," because it was not her husband's residence at the time of his death; nor in the "Burt place," because it had been conveyed by the deed of trust before any right of homestead attached.—55 Ala. 367; 53 Ala. 135, 147.

JAS. BENAGH, *contra.*—The decree in favor of Eagin was extinguished by the payment of the debt, principal, interest, and costs, as alleged in the cross-bill; and the vendor's lien was thereby discharged.—2 Brick. Dig. 323, § 12; *Ib.* 324, § 15; *Ib.* 325, § 33. All previous "promises and agreements" between Legg and McKinney were merged in the deed of trust, when it was accepted; and the rights of the parties must be determined by the deed.—Smith, Contr. 20, 28; Sto. Contr. § 671; Chit. Contr. 199; 1 Greenl. Ev. § 275; 1 Brick. Dig. 396,§ 297. As against the widow's rights of dower and homestead, the deed of trust is inoperative and void.—*Pettus v. McKinney,* 56 Ala. 41; *Chapman v. Abrahams,* 61 Ala. 108; 1 Scribner on Dower, 264, § 47. The deed of trust, if taken by Eddins, would have been a waiver of the vendor's lien on the land; and being taken by Legg, claiming as an assignee of the debt to Eddins, it must have the same effect.—*Mackreath v. Symonds,* 40 Law Library, 243; Bispham's Equity, § 355, and cases cited; *Foster v. Trustees,* 3 Ala. 302; *Walker v. Struve,* 70 Ala. 167; *Donegan v. Hentz,* 70 Ala. 437; *Coster v. Bank,* 24 Ala. 37.

BRICKELL, C. J.—The particular question of importance, and decisive of the rights of the parties, presented by this record—whether the lender of money to discharge lands, the homestead of the borrower, from the lien of the vendor for the payment of the purchase-money, acquires a right to be repaid, which is superior to, and will prevail over the right of the widow of the borrower to the homestead—was decided adversely to the appellants, when a cause between these parties was before this court at a former term, on appeal from a decree of the Court of Probate assigning homestead to the widow. *Pettus v. McKinney,* 56 Ala. 41. Subsequently, in *Chapman v. Abrahams,* 61 Ala. 108, the court decided, that an advance of money to a purchaser, to relieve lands from the incumbrance of the lien of the vendor, or the payment of money for that purpose, at the request of the purchaser, to whom the vendor, on the payment, conveyed the lands, did not create a resulting trust in favor of the lender, nor was he entitled to be subrogated to the lien of the vendor, which was by the payment extinguished. The advance, or payment, was made upon a verbal promise that it should be secured by a mortgage on the

8

[Pettus v. McKinney.]

lands; which was subsequently executed, but was invalid, because the purchaser was a married woman, to whom the lands on the payment were conveyed, thereby becoming her statutory separate estate, the alienation of which by mortgage was unauthorized. My own opinion was, that, under the facts of that case, the parties did not intend a payment of the debt for the purchase-money, nor an extinguishment of the lien upon the lands, but merely the substitution of one creditor for another,— a change in the form and evidence of the debt, but not of its character, and the preservation by mortgage of the lien to which the lands were subject; that the loan of the money, its application, the conveyance to the wife, and the mortgage, were but parts of one transaction, to which should be applied the general doctrine of a court of equity, that a deed conveying lands unconditionally, and a mortgage made by the grantee to secure the payment of the purcase-money, contemporaneously executed, are read as if they were but one instrument, and practically the legal effect is, that an estate on condition is created,— an estate which can become absolute only on the payment of the purchase-money. That view did not receive the acceptance of a majority of the court, and the principle already stated was announced.

Without departure from these decisions, which are rules of property, and can not without the introduction of insecurity to the titles to lands be disturbed, it is manifest the right of the widow must prevail. In the execution of the deed of trust to the lender of the money, made on the day of the loan, she did not join. The constitution declares void an alienation of the homestead by the husband, in the execution of which the wife does not join. The parol agreement of the husband, that the lender should have a security upon the lands for the re-payment of the money borrowed, was satisfied by the execution of the deed of trust, and as a satisfaction the lender accepted it. There was no fraud, no mistake of fact; in it all previous parol stipulations were merged. When parties make agreements verbally, and then reduce them to writing, in the absence of fraud or mistake, the writing becomes the sole memorial and expositor of the contract, and in it all prior parol or verbal stipulations are merged.—1 Brick. Dig. 865, § 866.

The debt for the purchase-money having been extinguished, the husband by the payment was clothed with a perfect equity in and to the lands. There remained outstanding in the original vendor no more than the naked legal estate, which was held in trust for the husband, and a conveyance of which he had an unqualified right to demand and compel. The statute entitles a widow to dower in all lands, of which the husband, at the

time of his death, has a perfect equity, having paid all the purchase-money thereof.—Code of 1876, § 2232.

We find no error in the decree of the chancellor, and it must be affirmed.

