# FARLEY, JUREY & CO. *v.* ROBERT H. HORD et al.

1. ESTATE OF DECEDENT — POWER OF ADMINISTRATOR TO CHARGE ESTATE. — Under the general law, an administrator has no authority to incur debts which will be obligatory on the estate he represents, except the incidental charges in due course of administration.

2. SAME — POWER OF ADMINISTRATOR TO CULTIVATE FARM. — There is an exceptional policy where the estate of a decedent consists, in whole or in part, of property employed in agriculture. The crop growing at the time of the decedent's death is assets, and may be dealt with by the administrator in two ways. It may be sold under order of the probate court; or, if the interests of the estate be best promoted thereby, the court may direct the administrator to cultivate and complete the crop; and all the labor and other property on the plantation may be employed for that purpose. The court may authorize the administrator, in like manner, to cultivate the farm until final settlement of the administrator's account, if to the interest of the estate, and without prejudice to the distributees.

3. GROWING CROP — SUPPLIES TO COMPLETE IT. — The clause in the statute in relation to completing the growing crop does not delegate to the administrator power to charge the expenses of the crop upon the general assets and property of the estate ; such creditors must look to the crop and its proceeds as a special fund. They take the risk of the sufficiency or insufficiency of the fund to meet their demands.

4. HEIR — ADMINISTRATOR — ART. 96, CODE 1857, P. 448 CONSTRUED. — The heir may enter upon the lands subject to the right of the administrator to the growing crop. The legislature did not intend " that authority to cultivate the farm until final settlement " should be so exerted as to postpone the distribution, or to keep the heir out of possession indefinitely. This custom should not be construed to confer upon the administrator any larger control over the farm than may be reasonably necessary to make the crop.

5. ADMINISTRATOR — STATUTORY TRUSTEE AS TO CULTIVATION OF FARM. — The administrator has not the general discretion of owner, and cannot deal with the property as such; he is a statutory trustee, invested with naked power, uncoupled with an interest, and must be confined strictly within the terms of the statute.

6. SAME — ASSETS FROM CROPS — CLAIM OF CREDITORS WHO FURNISH SUPPLIES TO MAKE CROP. — The words "in like manner" refer to the preceding clauses of the article describing the terms and conditions upon which he may complete the growing crop. The net profit, from year to year, after paying "taxes" and " other necessary expenses," are assets which go to the general fund, subject to the claims of general creditors, etc. Those who furnish "farming utensils, food and necessaries" for laborers and "other necessary things " shall be paid out of the proceeds of crops; they have a primary claim on this fund; and may appropriate the whole of it. Those advancing necessaries to make the crop are not general creditors, and cannot resort to the general assets.

7. EQUITY — SUBSTITUTION — CASE AT BAR. — If complainants contributed to supply necessaries to minor children, the extent of any equity they might have would be a substitution to the demands of Hord against the minors, to be ascertained by an account taken between Hord and the minors.

APPEAL from the chancery court of Washington county.   TRIMBLE, J.

The opinion of the court fully presents the features of this case as made by the bill.

*W. & J. R. Yerger*, for appellants.

Two points only are made by the demurrer.   1. That the debt due is not such as to entitle complainants to a decree as to the realty.   2. That they have an adequate remedy at law.   For the appellant it is contended, that Hord contracted the debt as administrator of the estate, under and by virtue of authority from the probate court, in the same manner that the wife had done previously; that the supplies and money furnished by the complainants were such as were really and truly necessary for carrying on the business of planting, etc., as contemplated by the Rev. Code; that the same had been applied to that end and to the maintenance of the wife of defendant, and of the minor children, etc.; and had been accounted for to, and allowed by, the probate court, etc.   As to when lands of a decedent may be sold to pay debts, see Evans v. Fisher, 40 Miss. 643 and 670.   See, also, Rev. Code, art. 96, p. 448.

The case of Evans v. Fisher is opposed to the idea that lands descend absolutely to the heir, charged only with debts due at the time of the ancestor's death; but treats such as consisting alike of a fund of real and personal assets, of which, as a general rule, the personalty is to be first applied.   But even this rule is subject to exceptions; for, under certain circumstances, the probate court may order the sale of lands to pay debts where there is personalty to extinguish them.   Rev. Code, art. 93, p. 447.   The Rev. Code, art. 80, p. 443, expressly provides that the lands as well as personalty shall stand charged with the "expenses settling the estate."

We contend that it is a just rule of law in every case, in which an officer of a court in a trust capacity contracts a valid and proper debt, about the management and in regard

to the trust property, that he will have the same refunded to him out of the trust property by the court.

2. It is plain that a court of chancery has jurisdiction. The administrator obtained the supplies for the benefit of the estate; he has so reported this to the probate court; the claim has been allowed as a proper and valid one; and he refers to like steps to subject the estate to sale for the purpose of paying the same. Woods v. Ridley, 27 Miss. 119.

*Nugent & Yerger*, on same side.

In Glenn v. Thistle, 23 Miss. 53, and Woods v. Ridley, 27 ib. 119, *et seq.*, the powers and duties of executors and administrators are clearly defined. It is their duty to discharge existing obligations against the intestate or testator, but it is not their duty or privilege to create new ones, unless by authority of law. Generally, an administrator has no control or authority over the freehold estate of his intestate, yet it is subject to the payment of debts before the actual appropriation of it for that purpose. It can be sold in the mode prescribed by law, although it be cast by descent upon the heir at law. Crowder v. Shackelford et al., 35 Miss. 345. See, also, French v. Davis et ux., 38 ib. 168.

The first clause of art. 96, p. 448, Rev. Code, authorizes the court to order the administrator to take charge of his intestate's plantation and manage the same to the completion of the growing crop. Trotter v. Trotter, 40 Miss. 705; Murphy v. Thomas, admr., 41 ib. 429; Byrd v. Wells, 40 ib. 715. The probate court has express authority by the statute to authorize the administrator to continue to cultivate his intestate's plantation. The claims sued on in this case represented in money the supplies furnished to the administrator to cultivate the farm, and to maintain and support the family and slaves of the deceased. The estate had the benefit of the supplies, and it is no more than just that it should pay for them.

There is one additional reason that this bill is equitable.

The money and supplies furnished by complainants to Hord were intended for and used in the maintenance and support of the minor heirs at law of the intestate and his slaves, and in a manner adapted to their condition and necessities. They were bound to be supported, and, beyond a doubt, even as a minor's estate is bound for the supplies furnished him adequate to his condition and necessities.

*Johnston & Johnston*, for appellees.

The question presented by the record is, whether the necessary expenses incurred by an administrator in cultivating the farm of his intestate constitutes a charge upon the real estate.    The consideration of this question involves the construction of art. 96, Rev. Code, 448.    By this article the court has the power to direct an administrator or executor to complete the growing crop.    They are to take charge of the plantation, etc., and to retain for that purpose all the slaves and personal property thereon, the proceeds of the crops to be assets.    By the second clause it is provided that the court may authorize the administrator to continue to cultivate the farm until final settlement, if the interest of the estate would be thereby promoted.    This statute is an innovation upon the common-law rights of the heir, so far as it affects the inheritance.

At common law real estate was not liable to simple contract debts, and was only liable for specialty obligations where the ancestor indicated a purpose to charge the land. 2 Jarman on Wills, 510.    Subject to this charge the lands descended to the heirs.    But by our law the lands, upon insufficiency of personal estate, are charged with all the debts of the ancestor.    Subject to this change lands descend as at common law.    When we seek to charge the lands with debts contracted after the death of the ancestor, we contend that the statute must be interpreted by the rule of strict construction.    26 Miss. 548 ; 29 ib. 120 ; 38 ib. 118 ; 31 ib. 678 ; 1 Kent's Com. 464.

The designation of one fund, the income, excludes the

idea of charging the land. Emanuel v. Norcome & Burwell, admrs., 7 How. 154. There it was held, that expenses incurred in completing the crop were a charge upon the income and not upon other property. See Ward v. Harrington et ux., 29 Miss. 246; Hagan v. Barksdale, 43 ib.

By our law the personalty stands chargeable with the just debts, funeral expenses, and the expenses of the administration, the lands are chargeable with the debts over what the personalty may be sufficient to pay. Art. 80, Rev. Code, 443. Upon this point see Dean v. Dean, 3 Mass. 261; Drinkwater v. Drinkwater, 4 ib. 356; also, Holman v. Bennett, 44 Miss. ; 7 How. 154.

*Valliant & Nelson,* on same side,

Contended that this claim was not such as to justify an order for the sale of the real estate. Sims v. Stilwell, 3 How. 176 ; Steel v. McDowell, 9 Smedes & Marsh. 193. It has never been held in this state that an action can be maintained against an administrator in his representative capacity, upon a promise to pay money borrowed by such administrator, on the ground that it was so obtained for the benefit of the estate. Wood v. Ridley, 27 Miss. 179, 180.

The real estate of a decedent descends to his heir unincumbered by any debts, except those which his ancestor made in his life-time. The administrator cannot take charge of the real estate except in the mode pointed out by the statute. Rev. Code, arts. 88 and 89, pp. 445 and 446; and see Evens v. Fisher, 40 Miss. 643. It is clear that it can only be for debts due from the ancestor, himself, that his real estate can be taken from the heir.

In this case it is charged that these debts were created by Hord as *administrator*, and not as guardian, although the allegations of the bill are often so vague on that subject, leaving it doubtful if the charge is made as administrator or guardian, that it subjects the bill to objection on account of its multifariousness. A defendant cannot be pursued in the same suit in the double capacity of guardian and

administrator.   Wren v. Gayden, 1 How. 365 ; also Payne
v. Stone, 7 Smedes & Marsh. 367.

If the articles and money furnished were for necessaries
to the children, their estate may be reached in the proper
action at law ; but the charge and custody and well being
of minor heirs does not devolve on the administrator.

SIMRALL, J. :

In 1854 I. B. Jackson departed this life, owning a large
estate, consisting of a plantation, slaves, etc.   His widow
administered on the estate, and, under the sanction of the
probate court, carried on the planting operations until some
time in 1859, when she intermarried with R. H. Hord, who
shortly afterward assumed the whole administration, and
conducted the planting business, as his wife had done, with
the approval of the probate court.   In his capacity of
administrator, for the supply of the plantation and slaves,
and the support of the family, which consisted of his wife,
and two minor children of Jackson, the intestate, the large
indebtedness mentioned in the bill was contracted.   The
slaves having been emancipated, and other personal prop-
erty destroyed during the late war, and Hord being insol-
vent, there are left no means to discharge this indebtedness,
except the lands.   The defendant Hord had declined to
apply to the probate court for license to sell the lands for
the payment of the debts, claiming that they were owing
by himself personally, and not chargeable upon the real
estate.   The prayer of the bill is, that the lands be charge-
able with the debts, and sold for their satisfaction.   To the
bill Hord, administrator, Mrs. Hord and the minor children,
demurred, assigning sundry special causes.   The demurrer
was sustained and the bill dismissed.

Have the complainants an equity to sell the lands ?   It is
not controverted by the counsel for the respective parties
that, under the general law, an administrator has no authority
to incur or create debts which will be obligatory on the
estate he represents, except the incidental charges in the

due course of administration.  A summary of his duty is found in the oath of office.  He must as soon as convenient pay off the debts and distribute the surplus.  The general tenor of the law does not encourage the idea that he can hold the property together and out of its income, through a series of years, realize money to pay off the debts; nor can he borrow money in anticipation of income ; nor can he keep it together on the theory and with a view of making profit for the distributees ; nor can he intermeddle with the lands which have descended to the heir, except in special circumstances.  These general principles will be found in the cases of Sims v. Stillwell, 3 How. 176 ; Woods v. Ridley, 27 Miss. 119; Evans v. Fisher, 40 ib. ; Holman v. Bennett et al., 44 ib. and many others.  But the dealings of this administrator with Farley, Jurey & Co. are attempted to be sustained on exceptional grounds.  There is an exceptional policy where the estate of a decedent consists in whole or in part of property employed in agriculture.  A growing crop, at the time of decedent's death, is assets, and may be dealt with by the administrator in two modes.  If deemed proper by him, it may be sold; under order of the probate court, at public or private sale.  Or should the interest of the estate be best promoted thereby, the court may direct the administrator to cultivate and complete the crop, in which event all the labor and other property on the plantation may be employed for that purpose.  In like manner the court may authorize the administrator to continue to cultivate the farm until final settlement of the administration accounts, if to the interest of the estate and without prejudice to the distributees.  Rev. Code, p. 448, art. 96. It is averred in the bill that Hord had the authority to cultivate the farm from year to year, and that the indebtedness was created for the necessary supplies to enable him to do so.  Having the authority of the probate court from year to year to make crops, it is argued for the creditors that he stood in the place of the decedent, clothed with power to provide the necessary means, in money and sup-

plies, and that his judgments, therefore, are burdens on the estate.   In other words, he has statutory authority to make debts in the line of cultivation and making crops.

It would be conceded that when the probate court passes on the question, "that the interests of the estate would be promoted, and the distributees would not be prejudiced," however unfortunate the decision in the given case, the distributees and heirs cannot arraign or impugn it in a collateral suit like this, as an objection to the authority conferred by the court to cultivate.   Nor would it be denied that the administrator, necessarily and by implication, must have power to provide the appropriate means, and if there was no ready money on hand, that he might procure them on a credit.   The debatable point is, what does he pledge, and to what must the creditor look for payment?   In Emanuel v. Norcum & Burwell, 7 How. 154, the clause in reference to completing the growing crop, was held not to delegate to the administrator power to charge the expenses of the crop upon the general assets and property of the estate ; but, that such creditors must look to the crop and its proceeds as a special fund.   That they took the risk of the sufficiency or insufficiency of the fund, to meet their claims.

The last clause of the statute in reference to continuing the cultivation must be read in connection with other provisions of law touching the duties of the administrator. The distributees have a right, after the expiration of a year, on executing refunding bonds, to receive and take into possession the personal estate.   The heirs may enter upon the lands, subject to the right of the administrator to the crop growing at the time of the death of the intestate.   Manifestly the legislature did not intend "that authority to cultivate the farm until final settlement," should be so executed as to postpone the distribution, or to keep the heirs out of possession for an indefinite period.   This cultivation by the administrator is subordinate to the right to distribution, and to the rights of the heir.   Nor should the statute relieve

that interpretation, which would confer upon the administrator any larger discretion or control over the farm, and the accessorial property upon it, than may reasonably be necessary to accomplish the object, *i. e.*, make the crops. He has not the general discretion of owner, nor can he deal with the property as such. He is, in this behalf, statutory trustee, invested with naked power, uncoupled with interest and must be confined directly within the terms of the statute.

The words "in like manner," introductory to the clause which empowers the court to permit the cultivation, refer to the preceding clauses of the article, describing the terms and conditions upon which he may complete the crop growing at the death of the intestate. The net profits, and surplus of the crops, from year to year, after paying "taxes" and "other necessary expenses," are assets which fall into the general funds of the estate, subject to the claims of general creditors, and the rights of distributees. Those who furnish farming utensils, "food and clothing" for laborers, and "other necessary things," shall be paid out of the proceeds of crops. They have a primary claim on this fund. If necessary they may appropriate the whole of it. Other creditors are postponed as to them, and have no claim except to the surplus after these creditors are satisfied. Those advancing necessaries to make and gather the crops are not general creditors of the estate, and cannot resort to the general assets. Hagan v. Barksdale, surv., etc., 43 Miss. ; 7 How. 154. The statute requires "an account of the crop" to be rendered, which is separate and independent of the annual account of his general administration. This is evidently for the purpose of disclosing how it has been disposed of, and ascertaining how much, over and above expenses incurred and paid, remains to fall into the fund of general assets. If a testator designate a special fund for a class of creditors they will be confined to that fund. 2 Story's Eq. Juris., § 1247. The rule would be precisely the same when the

statute named the fund.   Parties who deal with an administrator, operating a farm under art. 96 of the Code, are presumed to know the fund indicated for their payment, and to understand that the administrator has no power to make their claims a charge upon the general assets.

But it was urged at the argument, in order to withdraw the complainants from the operation of these principles, that they ought to be subrogated to the place and privileges of the creditors of the intestate, whose debts had been paid with their money; and in so far as the minor children of the intestate had been nurtured and maintained by their advances to the administrator, their interests in the lands were liable.

The response to these suggestions is, that the bill was not framed upon this theory, nor do its averments lay the foundation for such relief.   If any part of the money advanced to the administrator were applied by him to the extinguishment of the debts of the intestate, the complainants, on a proper bill for that purpose, might be substituted to the rights of such creditors.   Whether that would carry with it a claim to subject the lands, would a good deal depend upon the disposition that had been made of the personal assets.   If the complainants have contributed to supply necessaries to the minor children, the extent of any equity they might have would be a substitution to the demands of Hord (to whom the advances were made) against the minors.   And that could only be determined by an account taken, or the condition of the account between Hord and the minors.   Such relief was not in the mind of the pleader who framed this bill, nor are these proper allegations upon which to ground it.   The credits were extended to Hord, on the predicate that he was cultivating the plantation from year to year, until final settlement. The complainants must be presumed to know that the fruits and products of the plantation were the only security upon which their advances were made, and that the law

imparted no power to the administrator to charge any thing else for their payment.

The bill does not state a case that warrants a sale of the land.

Wherefore the decree of the chancellor is affirmed.