75  229
83  464
d83  465

# W. P. Cox *v.* W. F. Martin, Administrator, etc.

1. Administrators.  *Sheriffs, ex officio.  Termination of office.  Code 1892,* § 1859.

   If the sheriff, by virtue of his office, become, under code of 1892, § 1859, the administrator of a decedent's estate, his power to act as such ceases with his term of office as sheriff; and a suit brought by him as such administrator, may be revived in the name of the succeeding officer, though the original plaintiff be still amenable to account for his acts as administrator.

2. Replevin.  *Alternate judgment.  Deed of trust.*

   If replevin be brought against the trustee in a deed of trust for property rightly in his possession under such deed, and he give bond and retain the property, no alternate judgment can be awarded in his favor, for the reason that he is already in possession.  The proper judgment in such case is one authorizing him to retain the property, recover costs, etc.

3. Same.

   The principle that " when a trustee recover in replevin the property conveyed to him to secure a debt, the judgment should be for the property or its value not to exceed what will pay the legal charge upon it," is applicable only to cases in which a party has rightfully recovered a judgment for possession of the property, but has only a limited interest in it for the security of a debt less than its value.  If he be in possession, and his possession be adjudged rightful, he can retain possession of all the property, to deal with it under the terms of the deed of trust.  *Bates* v. *Snider*, 59 Miss., 497, limited.

4. Contract.  *Death of party.  Administrator, when bound.  Presumption.*

   Contracts are generally enforceable by and against personal representatives of deceased parties thereto, and it is presumed that parties in contracting intend to bind such representatives, even when they are not named.

5. Same.  *When death terminates.*

   Whenever the continued existence of the particular person contracted with—the contract being executory—is essential to the completion

of a contract, by reason of his peculiar skill or taste, death terminates the contract; but if the personal representative can fairly and fully execute it as well as the deceased himself could have done, he may do so, and enforce the contract.

6. SAME. *Contract to advance supplies to farmer.* *Code* 1892, § 1882.

A contract by a farmer, to obtain supplies for making crops, under which he mortgages his personalty and crops to secure payment, does not terminate with his death, but can be enforced by and against his administrator, and such a mortgage secures advances made to an administrator empowered to complete the crops, under code of 1892, § 1882.

7. EXEMPTIONS. *Head of family.*

An unmarried man is not the head of a family, within the law of exemptions of property from legal process, because his adult son, who is able-bodied and capable of earning a support, lives with him. *Hill* v. *Franklin,* 54 Miss., 632; *Powers* v. *Sample,* 72 Miss., 189–191, followed.

FROM the circuit court of Grenada county.

HON. C. H. CAMPBELL, Judge.

Jonathan Payne, a farmer, executed a deed of trust early in the year 1895 to W. P. Cox, trustee, for the benefit of Mrs. E. A. Cox, conveying some personal property, specifically described, and the crops to be grown in said year on his farm, to secure a debt of $48.50 already owing, but not due, and $250 to be advanced in supplies by Mrs. Cox. The debts were to mature November 1, 1895. Jonathan Payne died June 23, 1895, before the maturity of the crops, having obtained $88.44 worth of supplies. Shortly afterwards J. B. Jones, sheriff of the county, by virtue of his office, was granted letters of administration on the estate of the deceased, Payne, and obtained an order of court authorizing him to cultivate, complete, and gather the crops on the farm of the decedent, and to sell the same. Jones, as administrator, obtained further supplies under the deed of trust from Mrs. Cox.

In October, 1895, W. P. Cox, the trustee, took possession of some cotton raised on the farm, under the terms of the deed

authorizing him so to do, even before the maturity of the debt, in case the property was about to be removed, and that the administrator was about to remove it was conceded. In November following he took possession of the personal property specifically described, and some more of the cotton so raised.

The administrator, Jones, brought two actions of replevin against Cox, a separate one being instituted shortly after each seizure by him. All the property was restored to the trustee and defendant in each case, upon the execution by him of a proper forthcoming bond. The two suits were afterwards consolidated. Before the trial of the consolidated suit, the term of office of Jones, as sheriff, expired, and he was succeeded by appellee, Martin; and the order of the chancery court, showing that Martin had been appointed administrator of the estate of Payne, did not in terms discharge Jones as administrator, and because thereof, when it was proposed in this case to revive the cause in Martin's name, the defendant, Cox, objected thereto, but the court allowed the revivor.

On the trial the court below, objection being interposed, would not allow proof to be made by the defendant, of supplies furnished to the administrator by Mrs. Cox, beneficiary in the deed of trust, after the death of Payne, but did permit evidence showing what expenses were incurred in gathering and preparing for market so much of the crop as was necessary to protect the debts against Payne owing at the time of his death. It was shown on the trial that the deceased, Payne, was a householder and citizen of the state; that his adult son, who was able-bodied and capable of supporting and maintaining himself, lived with the father at the time of, and just preceding, his death, and, upon this proof, it was claimed that the administrator had no title to that portion of the property which was exempt from execution by law. The verdict of the jury was in these words: "We, the jury, find the amount as below due plaintiff as administrator of Payne: Ten bales of cotton, at $37.50 per bale; 250 bushels of corn, at twenty-five cents per bushel; and 240

bushels of cotton seed, at six cents per bushel, and find, after taking off one bale of cotton, $37.50, and nine head of cattle, $48.00, balance due Mrs. E. A. Cox, $113.85.''

Upon this verdict the court below adjudged that defendant retain $113.85 out of the proceeds of the first cotton seized by him; that he pay balance thereof to plaintiff, and that he pay plaintiff the value of the other property, or restore the same to his possession. The defendant appealed.

*Robertson Horton,* for the appellant.

Our contention is, that the appellant, who is the trustee in the deed of trust, was entitled to hold all of the property embraced in and conveyed by it, or he was entitled to none. It is so ''nominated in the bond;'' on that instrument we stand or fall. Jonathan Payne executed said instrument, evidencing full faith and trust in appellant to dispose of said property and pay to him the surplus, if any there should be. It is true, that on October 30, when the first writ of replevin was issued, the debt was not due, but the property was about to be removed by the administrator.

The case of *Bates* v. *Snyder*, 59 Miss., 497, does not militate against our position, for that decision was on § 2622, code of 1880 (§ 3726, code of 1892), where the judgment is for plaintiff *in toto.* Under § 3727, ''if the verdict be for defendant, he having given bond, the judgment shall be that he retain it, the property, and that he recover the damages sustained by the wrongful suing out of the writ.'' The judgment should have been rendered under either § 3726, that the plaintiff should recover all or none of the property, or under § 3727, that the defendant retain all of the property, for the verdict manifested a debt due from Jonathan Payne, the grantor in the trust deed, to Mrs. E. A. Cox, the beneficiary, and hence was for defendant. Both sections cannot be invoked. The court trying a replevin suit will not take upon itself to administer on an estate, and make distribution of it, as would a court of probate or

chancery.   It is often the case that a defendant can avail him-
self of rights which are denied a plaintiff.   *Asby* v. *Carr*, 40
Miss., 64; *Hunt & Vaughan* v. *Shackelford*, 55 *Ib.*, 94; *Pol-
lard* v. *Thomas*, 61 Miss., 150.

The appellee should not have been permitted to prosecute this
suit.   Jones, the then sheriff of Grenada county, administered
on the estate of Jonathan Payne, deceased, and had not been
discharged as such administrator at the time Martin was per-
mitted to enter the list and take a tilt.   If Martin was author-
ized to prosecute this suit, then he could have instituted one
against Jones, administrator of said estate, for whatever of
effects of said estate he might have in his hands, and not wait
for the chancery court to order distribution or direct the course
they should take.   There could not be two administrators thus
appointed at different times.   Jones should be wholly out be-
fore Martin could be partly in.

Jones instituted these suits, and, although administrator, he
would have been liable individually for costs if the cases had
gone against him, unless the court awarding costs should have
certified that "there were probable grounds for instituting,
etc., the suit on which judgment shall have been given against
him," etc.   See §§ 880 and 881, code of 1892.   Surely there
could be no equity, law or reason for rendering judgment for
cost incurred by Jones or on his behalf, against Martin, and
yet that would have been the case if it be law to let Martin
prosecute this suit and the case had gone against him and the
trial judge had refused to give the saving certificate, or else no
one would have been liable, as Jones was permitted to retire.
The property was not in custody of the law.   *McWillie* v. *Van
Vacter*, 35 Miss., 454; *Asby* v. *Carr*, 40 Miss., 67, 73; *Burle-
son* v. *Milan*, 56 Miss., 399; *Howard* v. *Proskauer*, 57 Miss.,
248–250.   Jones sued in his individual capacity.   The words
"administrator of Jonathan Payne, deceased," employed in the
declarations, are only *descriptio personæ.   Robertson* v. *Banks*,
1 Smed. & M., 666–671; *Richardson* v. *McLemore*, 60 Miss., 319.

The defendant was not permitted to show how much Mrs. E. A. Cox had expended in paying hands for gathering the whole crop of cotton, for ginning, wrapping, and preparing it for sale, even under the order of Jones, administrator. If Payne had in his lifetime given such an order, would not the cotton, corn, etc., have been bound under the trust deed? It would; and why should Jones not be in like manner limited in his powers?

Jonathan Payne was a householder, and M. C. Payne, his son, lived with him. He was, it is true, twenty-five years of age, able-bodied and able to support and maintain himself. We claim that Jonathan Payne was shown to be the "head of a family," and the instructions as to exemptions was improperly withdrawn from the consideration of the jury. *Powers* v. *Sample*, 72 Miss., 187, 190. The head of a family claiming homestead need not be a married man to avail himself of the benefit. A widow with dependent minor children may claim and become entitled to the homestead during her widowhood, though the children have outlived their minority meanwhile. 9 Am. & Eng. Enc. L., 450; 69 Ga., 60.

*W. C. McLean*, for appellee.

The appellant, upon the very threshold of his appeal, is met with the proposition that he recovered more in the lower court than he was entitled to, and hence he has no cause to be aggrieved at the ruling of the circuit court or at the verdict of the jury. The unquestioned fact is that Jones, the administrator, took possession of his intestate's crop, and cultivated and gathered it, under the order of the chancery court, by virtue of § 1882 of the code. After Jones had gathered the crop and prepared the same for market, the appellant took possession of the property, by virtue of the trust deed executed by the intestate, and he claims the property solely under that instrument. It is admitted that the intestate was cultivating the crop at the time of his death. Now, we say that the effect of the chancery court's order, authorizing and instructing the administrator

to take charge of the crop then growing and to cultivate the same, was to place the property *in custodia legis;* that the administrator is amenable to the chancery court alone for the property and its proceeds, and that no person or court possesses the power or authority to take it out of the hand of the administrator, except by and through the order of the chancery court.    There is no difference, in legal contemplation, between the power and right of a receiver over property in his possession and that which an administrator has over the crop, when he has been placed in possession by the chancery court, by virtue of § 1882 of the code.    The debts incurred in the cultivation of the crops are privileged claims, made so expressly by the statute—or, rather, this is the construction repeatedly placed upon the statute by the courts (see the annotations, paragraph 1 of this section) — and the section provides that "the adminstrator shall render a true account of the crop." Now, we ask "how can the debts incurred by the administrator in the cultivation of the crop" be made privileged claims, or how can the administrator "render a true account" of the crop, if a third party is permitted to take possession of the crop out of the hands of the administrator ?

The remedy of the appellant was plain, simple and adequate. All that he had to do was to propound his claim to the chancery court, and the court would have ordered the administrator to pay the beneficiary in the trust deed every dollar that was due her, provided the proceeds of the property were sufficient, after paying the claims named in the statute—that is, "the necessary expenses for the cultivation of the crop being first deducted." This was the sole remedy allowed the party, and this was adequate and complete.    The original administrator, Jones, was appointed by virtue of § 1859 of the code.    He was then sheriff of the county, and, under that section, his term and power as administrator terminated at the expiration of his term of office as sheriff.    That the court instructed the jury to find in their verdict the amount due the beneficiary under the trust

deed, was correct and in accordance with the repeated utterances of the court.

WHITFIELD, J., delivered the opinion of the court.

The court properly allowed Martin to be substituted for Jones in the replevin suits. Jones' power to act as administrator ended with his term of office as sheriff, though, as to liability for his acts as administrator, he would still have been amenable. There were not two administrators at one time, but successively, each becoming such under the statute, § 1859, code of 1892. Nor was there any error in overruling the objection that Jones sued as an individual. The suits were by him in his capacity as administrator. But we think the verdict in this case—a most anomalous one—is, in legal effect, a finding for the defendant. It manifestly ascertains a debt of $113.85 due the beneficiary in the trust deed, even under the ruling of the court that a claim for advances made, with which to make the crop after Payne's death, could not be set up in these suits at law.

It is settled in *Dreyfus* v. *Cage*, 62 Miss., 733, that the principle of *Bates* v. *Snider*, 59 Miss., 497, does not apply to a case where the creditor-defendant has bonded the property, and he wins. ''No alternative judgment,'' said the court, ''can be awarded in favor of the defendant, for the reason that he is already in possession of the property. The principle announced in *Bates* v. *Snider* is applicable only to cases in which a party has rightly recovered a judgment for the possession of property, but has only a limited interest in it for the security of a debt less than its value. . . . The single question to be tried in this case is whether, at the time of the institution of the suit, the plaintiff was entitled to the possession of the property. He was not so entitled if, at that time, any part of the debt secured was unpaid.''

So here the only proper judgment, the jury finding a debt due Mrs. Cox, was that the defendant retain possession of all

the property replevied. The trustee would, of course, then deal with it under the terms of the trust deed—sell to pay the debt due, etc. But the court below refused to allow the defendant to show the advances made, under the trust deed, to complete the crop within the limit of $250, and also refused to allow him to show the whole amount of expenses incurred in the necessary completion and preservation of the whole crop, limiting the advances to those made up to Payne's death, in June, and the expenses so necessarily incurred to those necessary to make and preserve so much only of the crop as would be sufficient to protect the advances of Mrs. Cox up to Payne's death, and the past advances of $48.50.

This action of the court proceeded upon the view that the contract was strictly a personal one with Payne, did not bind his personal representative, and was, hence, terminated by his death. It is true the contract does not name Payne's executor, administrator, heirs, or assigns. But says Mr. Freemen, in the note to *Chamberlain* v. *Dunlap*, 22 Am. St. Rep., at page 811, the most luminous treatment of the precise question under investigation we have anywhere found, after the most painstaking search: "It is a general rule of law that contracts bind not only the parties thereto, but also their executors or administrators. The law presumes that the parties to a contract intend to bind their personal representatives even when they are not named in the contract. Contracts are, therefore, generally speaking, enforceable against the personal representatives of deceased parties thereto to the extent of the assets which have come into their hands." Citing many authorities. And the administrator, having entered upon "the cultivation and completion" of this "growing crop," under § 1882 of the code of 1892, the proceeds—the necessary expenses being first deducted—were "assets in his hands." This crop, so far as necessary expenses in cultivating and completing it were concerned, was a primary fund for their payment as privileged claims. *Farley* v. *Hord*, 45 Miss., 96. And necessary expenses so in-

curred, since they are for the "common benefit of all," may be recovered as a privileged claim, no matter by whom incurred, if he be a party in interest." *Strauss* v. *Baley*, 58 Miss., pp. 131, 138.

Recurring now to the main question, it is clear that wherever the continued existence of the particular person contracted with —the contract being executory—is essential to the completion of the contract, by reason of his peculiar skill or taste, death terminates the contract; as, for example, "contracts of authors to write books, of attorneys to render professional services, of physicians to cure particular diseases, of teachers to instruct pupils, and of masters to teach apprentices a trade or calling." So, also, when the continued existence of a particular thing is essential to the completion of the contract, the destruction of the existence of the thing (its death) terminates the contract—as, in contracts for the sale of specific chattels, or for the use of a building, they ceasing to exist. 1 Beach on the Modern Law of Contracts, sec. 773, p. 946, note 3, with the authorities cited. "But where the contract with the deceased is executory, and the personal representative can fairly and fully execute it as well as the deceased himself would have done, he may do so and enforce the contract. And, on the other hand, the personal representative is bound to complete such a contract, and if he fails to do so, he may be compelled to pay damages out of the assets in his hands." Note *supra*, with authorities, 22 Am. St. Rep., p. 813.

The authorities clearly mark out and sustain these distinctions. Thus, if a purchaser who has ordered goods dies before the time for their delivery, the executor or administrator must receive and pay for the goods, or he will be liable to the extent of the assets in his hands for the damages that may be sustained by reason of the refusal to complete the contract of the deceased. 1 Addison on Contracts, sec. 453; 1 Beach on Modern Law of Contracts, sec. 774, note 4; *Martin* v. *Hunt*, 1 Allen, 418; *Wentworth* v. *Cock*, 10 Ad. & E., 42; *Cooper* v. *Jarman*, L. R., 3 Eq., 98. If a person contracts to build a house for

another before a certain day, and dies before that day, his personal representative must go on and finish the house. Note *supra*, 22 Am. St. Rep., p. 812, and authorities. And, in such case, the personal representatives of the builder are bound 'to complete his building contracts. *Irwin* v. *Browne*, 59 Cal., 37, while see, specially, 1 Beach on Modern Law of Contracts, sec. 231, p. 288, notes 8, 9, 10, with the authorities. And the personal representative of the person for whom the house is to be built must pay for its completion out of the personal estate in the first instance. Note in 22 Am. St. Rep., 812. For many other illustrations, too numerous to set out herein, see 1 Beach on Modern Law of Contracts, secs. 231, 773, 774, and the masterly note of Mr. Freeman to *Chamberlain* v. *Dunlap*, 22 Am. St. Rep., pp. 811–815.

We instance but three more: A contract for hiring for a year to do ordinary farm work is not terminated by the employer's death. 1 Beach on Modern Law Contracts, sec. 774, and note 5. And where a continuing pecuniary obligation is created by a guaranty, the consideration for which is entire and given once for all, the contract is not terminated by the death of the guarantor, unless the intention that it shall so terminate is clearly expressed in the guaranty itself. Note *supra*, 22 Am. St. Rep., p. 814. And a covenant to be responsible for and guarantee payment of the interest on a mortgage until the mortgaged premises should be so improved as to constitute adequate security for the debt, survives the death of the covenantor. *Ib.* In all these cases the law implies the intention that, in the one class, the contract shall, and in the other it shall not, be terminated by death. *Ib.*, pp. 811, 812. The parties may, of course, by express terms, agree that the contract shall be strictly a personal one, and thus, by the terms of the contract, exclude substituted performance, and the death of either party would, of course, then terminate the contract. 1 Beach on Modern Law of Contracts, sec. 231, p. 288, and note 11. *Silver* v. *Gray*, 86 N. C., pp. 566, 570, an excellent illustrative

case of the distinction between the two classes of contracts.
See, also, Bishop on Contracts, secs. 620, 622; *Blond's Adm'r*
v. *Winstead*, 23 Pa. St., 316; *Shultz* v. *Johnson's Adm'r*, 5 B.
Monroe, p. 497, showing that, in addition to the considerations
above suggested, reference must also be had to the subject-
matter of the contract, and that the test, at last, always is, what
was the intention of the parties? This last case was properly
decided upon the ground that the parties contracting there for
hemp of the other party's " own raising," were buying that
particular quality of hemp to sell again.

And, finally, it is well said by Mr. Freeman in the note,
*supra*, that the line of demarkation between the two kinds of
contracts is not very clearly marked in some instances, as is
shown by a comparison of the case of *Dickinson* v. *Calahan*,
19 Pa. St., 227, where a contract to sell all the lumber to be
sawed at his mill during five years, the heirs and representa-
tives not being mentioned, was held dissolved by the party's
death, with the subsequent case in 106 Pa. St., 558 (Billings'
appeal), where it was held that a contract for the cutting of
timber, not involving expert skill, which did embrace the per-
sonal representatives and heirs, did survive. But the obscurity
of instances like these does not affect the clearness of the dis-
tinction between the two classes of cases marked out by well-
considered authorities. In determining whether a contract is
a strictly personal one or not, it is doubtless true that, as stated
by Mr. Freeman, " the facts and circumstances of each partic-
ular case will be taken into account." We refer specially also
to the masterly opinion of Judge Peckham in *Chamberlin* v.
*Dunlap*, 22 Am. St. Rep., 807. If, now, we turn from this
review of the authorities elsewhere to our own reports, we
shall find but two cases bearing on the question—*Alsup, Adm'r*,
v. *Banks*, 68 Miss., 664, where it was held that the adminis-
trator of a lessee of lands for five years, the lessee having
died in the first year, was bound to carry out the contract,
there being no discussion, however; and, *Hill et al., Adm'rs*

*of Martin*, v. *Robeson*, 2 Smed. & M., 541, in which it was held that when a planter employed an overseer for one year for three hundred dollars and died in May of the year, and the overseer rendered the services for the whole year, death did not terminate the contract, and the administrators of the planter were bound to pay for all the services rendered, both before and after the employer's death.   This case—like the case cited *supra*, *Martin* v. *Hunt*, 4 Allen, 418, where the personal representative was bound to receive and pay for goods ordered in his lifetime by the deceased, is in principle directly in point; for, if the employer's administrator is bound to pay the overseer for services rendered after the employer's death, in making a crop, why is not the farmer's administrator bound for supplies furnished after the farmer's death, necessary to make that crop ?   There is no difference in principle between the cases.

What, now, are the particular facts of this case ?   There is nothing in this record to show that Jones, the administrator, could not fully and fairly carry out and complete this contract as well as the deceased could have done.   On the contrary, the whole tendency of the evidence is to show not only that he could, but that he did.   He retained Payne's son, on his contract with his father, as agent, and he, in a written order, called on Mrs. Cox to furnish supplies, which she did, to cultivate and complete this growing crop—both manifestly acting under the mutual obligations of the contract, the trust deed.   Mrs. Cox had the right, under this contract, to look to the whole crop for security for what she had advanced before Payne's death, and the correlative right, necessarily, to make the advances and incur the expenses necessary to the preservation, cultivation, and completion of such crop, so as to make it an available security, and she also clearly had the right—and such, manifestly, from the contract, the subject-matter, and the relative situation of the parties, was their clear intention—to make such advances and incur such necessary expenses after his death.   We are, therefore, clearly of the opinion that this contract was one

which was not terminated by Payne's death, and which, conse-
quently, his personal representative was bound to complete,
and that to the extent of the proceeds of such crop, "necessary
expenses being first deducted," he was liable in these suits
to respond. Mrs. Cox had the right to hold the crop, under the
contract, for all supplies advanced thereunder, and if any of such
expenses were incurred outside of the contract, she was entitled
to them by virtue of the principle that they were incurred of
necessity for the "common benefit," and that, being thus in-
curred, she had, as to them, on that distinct and independent
ground, a prior right of payment out of the crop. *Strauss* v.
*Baley*, 58 Miss., *supra*.

Under the view, now settled for us, taken by this court of
the exemption law, in *Hill* v. *Franklin*, 54 Miss., 632, and
*Powers* v. *Sample*, 72 Miss., 189, 191, Payne was not entitled
to the exemptions claimed.

*For the reasons indicated, the judgment is reversed and the
cause remanded.*