## RE PARTRIDGE'S ESTATE.

(51 Pac. 82.)

31 297<br>36 282

ACCOUNTING BY ADMINISTRATORS—SPECIAL COMPENSATION.*—In presenting a claim for extra compensation an administrator should particularly state the services on which it is based with such explanations as will enable interested persons to fairly understand the situation: *Steel* v. *Holladay*, 20 Or. 462, cited and applied.

DISCRETION OF COUNTY COURT—EXTRA COMPENSATION OF ADMINISTRATORS.†—County courts must exercise a wide discretion in determining the reasonableness of claims for extra services to estates, and in the present case the allowance will not be disturbed.

REMOVAL OF ADMINISTRATOR.—Under the provisions of sections 1094 and 1100, Hill's Ann. Laws, an administrator should be cited to appear, and ought to have an opportunity to be heard, on the question of his removal, yet these requirements are sufficiently complied with where there is a hearing on the officer's reports, and if good cause appears in these proceedings the court may remove him without a special hearing on that particular matter.

From Multnomah: E. D. SHATTUCK, Judge.

Judicial settlement of the accounts of G. M. Weister, administrator with the will annexed of the estate of E. J. Partridge, deceased, to which the M. A. Seed Dry-Plate Company filed objections. E. J. Partridge, who was a resident of Portland, and engaged in the wholesale photographic supply business, died testate, on the —— day of June, 1891. On July 7, G. M. Weister was appointed special administrator of his estate, with power to "continue the business and collect the outstanding bills as speedily as is consistent

---

*Section 1188, of Hill's Ann. Laws, relating to extra compensation of administrators and executors is as follows: "* * * In all cases such further compensation as is just and reasonable may be allowed by the court or judge thereof for any extraordinary and unusual services not ordinarily required of an executor or administrator in the discharge of his trust."

†On this subject see *Re McCullough's Estate*, 31 Or. 86.

with the good of the business." Weister qualified, and entered upon the discharge of his duties, and continued to act as special administrator until December 10, 1891, when he was appointed administrator with the will annexed, the executor nominated in the will failing to serve, but no order was entered allowing him to continue the business as before. In the meantime, about September 10, the residuary legatees consented in writing that the administrator should continue the business as it had been prior to the death of decedent. Among other things, the will provides as follows: "I hereby nominate, constitute, and appoint my brother, Samuel C. Partridge, executor of this, my last will and testament; * * * and I further direct that the photograph supply business heretofore conducted by me at Portland be continued or discontinued by my executor, as he shall deem best; *provided, however*, that, in the event that my said executor shall determine to continue the said business, the consent, in writing, of a majority in interest of my residuary legatees above named, shall be necessary; and, if such consent is not obtained, that my said executor shall proceed to wind up said business and realize on the assets thereof." The administrator continued the business after the latter appointment, and on August 3, 1892, he filed what is denominated a "report of summaries of business transacted by him during six months last past," which is as follows:—

Cash on hand at time of appointment - - $   623 62
Cash received on old accounts, from June,
    1891, to June 13, 1892  -   -   -   -   -   3,498 12

Cash received on sales merchandise to
   June 13, 1892, accounts - - - - - 17,081 04
Cash received on daily sales merchandise
   to June 13, 1892, accounts - - - - 4,651 91

$25,854 69

Paid on claims and for expenses and new
   merchandise - - - - - - - - - 25,800 58

    Balance cash on hand - - - - - $    54 11

On November 1 he filed the following account, in pursuance of the order of the court made at the instance of the M. A. Seed Dry-Plate Company, which also required him to show cause why said estate should not be wound up and settled:—

### ASSETS OF ESTATE.

Stock, goods, wares, and merchandise - - $ 9,224 83
Accounts on books owing the estate - - 9,084 59

$18,309 42

### LIABILITIES.

Claims allowed, reported November 1, 1892 $ 7,928 16
Current accounts of the business - - - 2,980 86

$10,908 92

Claims paid - - - - - - - - - - 682 50
Leaving a probable balance of - - - - 7,400 50
Claims collected on accounts due estate at
   time of inventory - - - - - - 3,773 17

These comprise all the reports or accounts made or filed by the administrator touching his management of the estate, except the one now to be noticed. On December 20, 1892, he was ordered to close out

the business and file his final account by April 1, 1893. The date was subsequently postponed to May 1, and then to July 1. On July 18 he filed what he denominated his "final report and account," which purports to show only the "moneys and assets coming into his hands and amounts disbursed since November 1, 1892." Among the items of expenditures are $728.20 for rent and $2,199.15 for salaries. The prayer is that the account may be adjusted, and distribution ordered, and that he and his bondsmen may be finally discharged. The day for final hearing and settlement of the account was set for September 5, 1893. Prior to the last named date the M. A. Seed Dry-Plate Company, which was a creditor of said estate in the sum of $1,284.55, filed objections to said account, and more especially to the item of $2,199.15, salaries from November 1, 1892, to the date of filing the final account, and set up some facts tending to show negligence and misconduct of the administrator and maladministration of the estate. Upon the hearing, the court disallowed the claim for salaries except $810, and made an order charging him with the difference between the amount claimed and the amount allowed, together with other moneys admitted to be in his hands, and removed him from his trust, and appointed Miss Alice Gibson administratrix *de bonis non* with the will annexed. An appeal was taken from this order and decree to the circuit court, and there affirmed, and Weister now prosecutes an appeal to this court.

AFFIRMED.

For appellant there was an oral argument by *Mr. Cicero Milton Idleman*, with a brief to this effect:

An administrator cannot be removed except upon direct proceedings for that purpose: Hill's Ann. Laws, §§ 1087, 1094, 1095, 1100, 1173, 1174, 1175; *Ramp* v. *McDaniel*, 12 Or. 108; *In re Holladay Estate*, 18 Or. 168; *Wright* v. *Edwards*, 10 Or. 298, 301; *Rostel* v. *Morat*, 19 Or. 181, 184.

The only issue before the county court upon the trial of this cause was that presented by the objections to the final account of the administrator. These objections are detailed and specific and, with the answer thereto, present clear and definite issues, and upon these issues, and these alone, the evidence was taken and the case tried. The issues thus formed prescribe the limit of investigation, and of necessity, the extent of the decision. Within these limits the court may be conceded the largest latitude of discretion, but surely no court has discretion to grant relief entirely outside the issues and especially to grant a character of relief different from that sought and for which the statute has provided a special mode of procedure.

Proceedings for the removal of an administrator are specially provided for and the method of invoking the jurisdiction of the court for that purpose is particularly pointed out in the statute: Hill's Ann. Laws, §§ 1094, 1095, 1100. The only difference between the two methods pointed out by these sections is that in the former the proceedings are begun by petition which is the basis of the notice, and in the latter the proceedings are instituted upon motion of the judge

based upon certain facts within his knowledge. In both methods of procedure the administrator must have notice that proceedings for his removal have been instituted and that he must appear and defend upon that issue. In this case there was no suggestion either in the objections filed, or in any of the proceedings, that there was to be an effort to remove the administrator. If the court was not satisfied with his management of the estate a citation to show cause why he should not be removed might have been issued to the administrator under section 1100, but the court had no power to summarily remove him because not satisfied with his report. This was beyond the jurisdiction of the court. If the court was not satisfied with the administrator's report and sustained the objections to it the administrator might either appeal from that decision or he might file another report obviating the objections: *Rostel* v. *Morat*, 19 Or. 181. But inasmuch as the court summarily removed the administrator he had no opportunity to file any additional report or to make any further showing.

For respondent, the M. A. Seed Dry-Plate Company, there was an oral argument by *Mr. J. Couch Flanders*, with a brief over the names of *Williams, Wood & Linthicum*, and *Mr. Flanders*, to this effect:

County courts are, in the nature of things, vested with a very large discretionary power over the conduct of executors and administrators, and its exercise will not be interfered with on appeal, unless plainly required by some principle of law: *In re Holladay's Estate*, 18 Or. 168.

When, in the hearing of objections to the account of an administrator, a showing is made of maladministration by an administrator, the probate court has inherent power to remove such administrator, although no direct proceeding for such removal had been instituted: *Succession of Glover* (La.), 9 So. Rep. 97.

The amount of extra compensation to be allowed an administrator, over and above the statutory compensation, is discretionary with the probate and circuit courts, and such discretion will not be interfered with on appeal: *Steel* v. *Holladay*, 20 Or. 462, 465; *Mower's Appeal*, 48 Mich. 441, 452; *Wilson* v. *Wilson*, 3 Gill & J. 15; *West* v. *Smith*, 8 How. 411; *Handy* v. *Collins*, 60 Md. 230 (45 Am. Rep. 725).

No allowance should be made to an executor for unusual or extraordinary services, unless an account is presented setting forth the same: *Steel* v. *Holladay*, 20 Or. 462, 465; *In re Moore's Estate* (Cal.), 31 Pac. 584, 585; *Collins* v. *Tilton*, 58 Ind. 374.

An administrator may forfeit right to compensation by misconduct in office: Crosswell on Executors, § 546.

PER CURIAM.    Error is predicated of the action of the county court in two particulars: First, in the disallowance in part of Weister's claim for salaries from November 1, 1892, to the date of filing his final account; and, second, in removing him as administrator, because the proceeding was not one instituted under the statute for the especial purpose, nor by citation to the administrator to show cause against such action.

It is shown by the evidence in the case that a con-

cern styled the " Weister-Meek Company " was formed about January 1, 1893, to engage in the same line of business as that carried on by the Partridge estate, under the administration of Weister. Miss Alice Gibson, the bookkeeper of the Partridge estate as well as for the Weister-Meek Company, says it actually commenced business January 1, 1893, but had no stock until some time in February; and Weister admits that it began in February or some time before. There is but little doubt that Weister was a member of the concern, but he claims that he was only nominally so, and that his name was used by Meek without his consent. It is certain, however, that he was its sole manager from its inception until the remaining goods of the estate were sold at auction, June 26, 1893, and that Meek had but little, if anything, to do with it. The business of the company was opened up and carried on in the same building as that occupied by the Partridge estate, and the same help employed in the one as in the other; that is to say, the two concerns occupied the same building, and were managed and conducted by one person and his employees each working upon a single salary. These salaries and the rental for the building thus occupied were all paid out of the funds of the Partridge estate; but, to compensate the estate for services rendered the Weister-Meek Company by said manager and employees, and for the use of the building from the time of its inception, Weister charged the company with $150, and gave the estate credit for a like amount. The alleged expenses for salaries was $250 per month, except when a stenographer was employed, in which event it

was more, and the rental was $85 per month.   An attempt was made to show the relative amount of business transacted by each concern, which was estimated to be about 75 per cent. by the estate, and 25 per cent. by the company.   After December 20 the administrator was engaged solely in closing out the remnant of stock on hand, and collecting outstanding claims and accounts, by direction of the court, for the purpose of winding up the business and settling the estate.   The claim for salaries is stated in the account in a lump sum, but no vouchers were filed therewith nor produced at the trial.   Weister claimed a salary for his own services of $100 per month, but it does not appear to whom, or what amount to each, the balance of the expense for salaries was paid, nor is there anything to show the necessity or reasonableness thereof.   In this state of the record, the county court allowed Weister $810 in addition to his regular statutory commission of $384.23 upon the appraised value of the estate, as reasonable compensation for extraordinary services as such administrator, and disallowed the balance of his claim.

Ought we to disturb this conclusion?   The appellant has not shown himself entitled to more.   The statute requires that the final account of an administrator shall contain a detailed statement of the amount of money received and expended by him, from whom received, and to whom paid, and refers to vouchers for such payments: Hill's Ann. Laws, § 1173.   As it pertains to the alleged expenses paid on account of salaries, as with other alleged expenses, the account filed fails utterly in a compliance with the statute, nor

81 Or.—20.

does the proof help the administrator except as it pertains to his individual salary.  Beyond this feature, it was the duty of the administrator to state with particularity his claim for extra compensation, so that the court, as well as those interested in the estate, may be informed fully of the nature of the service rendered, and of its necessity and value to the estate, and be thereby enabled to distinguish the items which are a proper charge from those that may be unjust and improper: *Steel* v. *Holladay*, 20 Or. 462 (26 Pac. 562).  In *May* v. *Green*, 75 Ala. 167, it is said that "proof, moreover, should have been made of each special service with its peculiar value, and the whole should not have been aggregated by mere estimate without being itemized."  Under these authorities, and in the light of the facts of the case, with the large discretionary power lodged with the county court in determining the amount and reasonableness of charges as extra compensation, we are unable to say that its conclusion is unjust to the administrator; and we are constrained to permit the decree in that respect to stand.

As relating to the second contention, the statute provides that an executor or administrator may be removed, upon application of an heir, legatee, devisee, creditor, or other person interested in the estate, for unfaithfulness or neglect of his trust to the probable loss of the applicant; or the court may, for like cause, upon its own motion, remove such officer; but in either instance he must be cited to appear and show cause why such action should not be taken, and is thereby accorded a hearing in the premises:  Hill's

Ann. Laws §§ 1094, 1100. In the case at bar there was no such citation and no hearing had upon the precise question. But the administrator was before the court upon his own application to be discharged. It appeared, however, that the estate had not been fully administered, there being many accounts due the estate which were yet uncollected; and there was much evidence adduced showing maladministration on the part of Weister. He, as administrator of the estate, sold goods to himself, as manager of the Weister-Meek Company; and these he again sold at a profit to the company of more than 100 per cent. During the time the two concerns were engaged in business in the same building, there was sold to the company goods for which it paid the estate $360, which were again sold by the company to its customers for $742.67; and when the goods belonging to the estate were finally disposed of at auction, it seems that large quantities of them found their way into the Weister-Meek Company's business, since which time Weister has continued as manager, and received a salary direct from the company. An attempt is made to explain this action of the administrator by testimony that the company sold on credit, while it purchased from the estate for cash, and that, through the agency of the company, the estate was enabled to dispose of a larger amount of its stock, and at a greater profit, than it could otherwise have done; but, considering all, the administrator has not satisfactorily justified his management of the estate. He has had much time within which to have collected and adjusted the outstanding accounts without satisfactory results, and, in

view of his past conduct, it is reasonably inferable that his continuance in office would probably be followed by loss to interested parties. Whether or not the order of removal was proper, as a primary act, we shall not determine; but having been made upon what would appear to be sufficient cause, though not in a proceeding instituted directly for that purpose, with citation to him and an opportunity to be heard upon the precise issue, this court will not now disturb it (*Succession of Glover* [La.] 9 So. 97); and the decree of the court below will therefore be affirmed in so far as it affirms the decree of the county court. The court costs attending the appeal in both instances should be borne by the estate.

AFFIRMED.