Argued 23 October; decided 12 Nov., 1901; rehearing denied 6 January,1902.

## CONSER'S ESTATE.

## WARREN *v.* HENDRICKS.

· [66 Pac. 607.]

EXECUTORS—BOND AND OATH.

1.   Where a will fixes the amount of the executor's bond at a sum that is reasonable in proportion to the value of the estate, and such bond has been given to the satisfaction of the county court, the executor need not take the oath prescribed by Section 1088 of Hill's Ann. Laws,* provided for in cases where the bond is dispensed with by. the testator.

EXECUTORS—OBJECT OF NOTICE TO CLAIMANTS.

2.   The object of Hill's Ann. Laws, § 1131, requiring every executor to publish a notice of the time and place for presenting claims against the estate is to give that information to interested persons, and the giving of such notice is not a prerequisite to the right of the executor to enter on the discharge of his duties.

CLAIMANTS AGAINST ESTATES—TECHNICAL OBJECTIONS.

3.   A residuary legatee is not a claimant against an estate within the meaning of Section 1131 of Hill's Ann. Laws; but if he were, some injury must be shown before he will be permitted to object to the final account because some technical requirement has been imperfectly complied with.

NECESSITY OF INVENTORY—FINAL ACCOUNT.

4.   The requirements of Section 1112, Hill's Ann. Laws, as to the filing of an inventory of an estate, should be substantially complied with, but if some of the property shall be omitted, or even if no inventory whatever shall be filed, the validity of the final account will not be affected if the property of the estate has been accounted for; in short, the settlement of a final account is to be determined by its own accuracy and completeness, and not by the inventory at all.

EFFECT OF NOT ENTERING ORDER.

5.   Where an order has actually been made by a judge, the failure to enter it in the journal, or the loss of a paper on which the order was based, does not affect the good faith of the officer who acts under such an order.

---

*Sec. 1088.   No executor or administrator is authorized to act as such until he shall file with the clerk of the county court having jurisdiction of the estate an undertaking in a sum not less than double the probable value of the estate, with one or more sufficient sureties, to be approved by the county judge, to be void upon the condition that such executor or administrator shall faithfully perform the duties of his trust according to law; *provided,* that when by the term of his will a testator shall expressly declare that no bonds shall be required of his executor, such executor may act upon taking an oath to faithfully fulfill his trust without filing the undertaking in this section mentioned; *provided further,* that such executor shall be criminally and civilly liable as other executors and administrators are for any dereliction of duty.

A Sale Not a Composition.

6.   A sale by an executor of a debt to a third person under an order of court is not a composition of the debt, though the sale is for less than the appraised value.

Appraised Value—Loss—Burden of Proof.

7.   Where there is any loss in value of the assets of an estate as shown by the inventory of the executor, the burden is on him to show that the loss occurred without fault on his part, but this is done when it appears that specified property brought all it was reasonably worth.

Pleadings on Objections to Final Accounts.

8.   A convenient practice in the settlement of final accounts in probate is to consider the issues as made by the account and the objections thereto, without requiring a reply by the executor.

Objections to Final Account—Setting Aside Sale.

9.   On objections to the final accounting of an executor, a contention that the sale of real estate by him should be set aside because made for an inadequate sum cannot be considered, the purchaser not being a party to the proceedings, and there being no process by which he might be brought in.

From Lane:  James W. Hamilton, Judge.

The last will and testament of Elizabeth Conser, deceased, having been admitted to probate, and T. G. Hendricks appointed executor in pursuance thereof, he prepared and filed an inventory and appraisement of the estate, setting forth various items of personal property, among which appears the following:  "William Edris, W. P. Edris, K. S. Edris, one note, $8,120, date February 7, 1894, payable on or before three years, interest 10 per cent. Credits.  *  *  *  Present value:  Principal, $6,600; interest, probable real value $4,500, $684.50."  It also contains, among others, the following items of real property:  Conser Block, on Ninth Street (with description), value $8,000; store occupied by Ax Billy, etc., value, $6,000.  Subsequently, on December 5, 1898, the executor filed his final account, reciting, *inter alia*, that he had published notice to the creditors; that six months had elapsed since publication thereof; that all claims against the estate had been paid; that he had collected all outstanding notes that were good, had sold all the real property which he was authorized to sell, and that the estate was ready for final settlement.  Among the items of money received are these:  "Of Wolf and Rachel Sanders, from sale of Ax Billy store, $5,450;"

"from sale of William Edris' note, $4,500;" "of Mrs. Shannon, for sale of Conser Block, $6,750." To this account Mrs. Mary E. Warren, the residuary legatee, interposed objections, assigning divers reasons; among others, that the executor did not give proper bonds or take an oath to faithfully fulfill his trust; that he neglected to publish notice to creditors, or to file proof of the same; that he failed to inventory all the property, and have it appraised as the law requires; and the form of the account is criticised as not charging the executor with the appraised value of the estate, rents, interest, and personal property not inventoried, and for failing to take credit for real and personal property on hand. Specifically, objections are made to the sales of real property to Wolf and Rachel Sanders and Elizabeth Shannon, because of want of authority in the executor to make them in the manner adopted, and attending irregularities, and of discrepancies between the appraised, which, it is alleged, was the real value and the sale value; it being sought either to have the sales set aside, or to charge the executor with the deficit in each instance. It is further objected that the Edris note was disposed of for a sum much less than its appraised and actual value, and that the executor should be charged with that deficit also. Then follow other objections going to various items of credit claimed. There was a reply and a trial, after which the court settled and allowed the account. The objector appealed to the circuit court, and, the decree of the county court having been affirmed, she now appeals to this court.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. W. C. Hale.*

For respondent there was a brief and an oral argument by *Mr. Geo. B. Dorris.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1.  The estimated value of the estate being $45,000, it is objected that the executor did not properly qualify, so as to entitle him to enter upon the discharge of his trust; but the objection cannot avail, as the will fixed the amount of the bond at $20,000, and a bond in that sum was executed and approved by the county court. This provision of the will was reasonable, and, the bond designated having been given, it was unnecessary to require the executor to take the oath prescribed in cases where the undertaking is wholly dispensed with.

2.  There was a publication of notice to creditors, and the only real objection urged thereto is that the proof of publication was made by the publisher, and not by the printer or his foreman, and was not filed within six months. The statute requiring such notice is for the benefit of those having claims against the estate, that they might thereby be informed of the appointment of the executor or administrator, and of the time and place for the presentation of their demands to him; and is in no sense a prerequisite to his entering upon the discharge of his duties: Hill's Ann. Laws, § 1131.

3.  The objector is not a claimant within the meaning of this provision; but, if she is, it is not apparent that she has been injured by the executor's imperfect compliance with the statutory requirements, and hence she cannot be heard to urge such objection against the settlement of the final account. This being so, it is unnecessary to consider whether the notice was filed in time, or the proof of publication properly made. If loss or inconvenience has befallen a claimant because of the irregular action of the executor in this regard, then the question might be pertinent; otherwise not.

4.  Much criticism is directed against the inventory. It is claimed that a judgment of $40 against Cochran & Campbell, 480.20 bushels of wheat disposed of by the executor and accounted for at $240.17, and items of wheat, oats, and hay received as rent from the Cochran farm at $36.80, were never inventoried or appraised. The first item was overlooked by

the executor, but we assume that the property described in the other two came into existence after the appointment, and was sold, and the proceeds accounted for. The statute makes it incumbent upon the executor or administrator, within one month after his appointment, or such further time as the court or judge may allow, to make and file an inventory and appraisement of the property of the estate, and if, after the filing thereof, other property shall come to his knowledge, or into his possession, that he shall inventory that also, and have it appraised: Hill's Ann. Laws, §§ 1112, 1119. The manifest object of the inventory and appraisement is to preserve a record of the property, and ascertain and determine its value, and the executor is properly chargeable, primarily, therewith at the value fixed. Undoubtedly, these provisions should be substantially observed; but, if they are not, provisions are elsewhere made by which the executor may be required to give proper heed to them. The judgment should have been inventoried and appraised, but as to the grain received as rent after his appointment it is not so clear that it was intended to be appraised. It was sold, the proceeds accounted for, and no complaint is made that it did not fetch a reasonable price. But, however that may be, the fact of a nonappraisement of certain property of the estate could not affect the validity of the final account if all the property received, or which by reasonable diligence should have been received, has been punctiliously accounted for. If there had never been any inventory or appraisement, and the executor had faithfully and economically administered the whole estate, and had fully and fairly accounted therefor, he would be entitled to an order settling his account and to a discharge. He may have been put to the trouble of showing the values with which he should be charged, but it would not affect the jurisdiction of the court to allow and settle his account.

5. The purpose of the objection to the Edris note transaction is apparent, and it should be remarked in this connection that a mortgage on realty was given to secure the note and accompanies it. It will be noted, however, that following the

item in the inventory are the words and figures: "Present value: Principal, $6,600;" then follow, "Interest, probable real value, $4,500, $684.50." The inventory in the main is in type, but the words and figures, "probable real value, $4,500," are interpolated, and were written by the appraisers at the time of making the appraisement. What was intended is not altogether clear, but the most reasonable interpretation is that it constitutes an appraisement of the note and interest accrued at $4,500, and should be charged to the executor in the first instance at that sum. But, be that as it may, we will discuss the matter in both aspects, as the question subsequently arises as to whether the executor should be charged in his final account with the appraised value where he has disposed of the property at a less figure. There is much evidence in the record touching the disposition of this note and mortgage. G. R. Chrisman, one of the appraisers of the estate, testifies that after mature consideration the appraisers concluded that the proper value was $4,500, and intended to appraise it at that figure. The executor says, in substance, that the note was not worth to exceed $4,500; that before the decease of Mrs. Conser he had endeavored to sell it for $5,000 without avail, and that $4,500 was all he could obtain after repeated efforts; that before the sale thereof he petitioned for and obtained an order from the county court to sell it at private sale, and that it was disposed of in pursuance of said order. It is suggested that the petition was not filed with the clerk, nor was the order entered in the journal. If so, it was probably an oversight of some one, but does not affect the *bona fides* of the transaction on the part of the executor. George Midgley, the purchaser, testifies that he subsequently purchased Edris' right to the mortgaged premises, including other property, for $1,650. It is difficult to say what amount of other property is included, but it must have been of considerable value, as it consisted of two lots, together with bolts, tools, ropes, etc. It appears that he commenced a suit to foreclose, and incurred some expense in that way, but finally settled the matter by purchasing Edris' equity of redemption in the mortgaged

premises and the other property at the figure named. Midgley is of the opinion that he gave the executor all the note and mortgage was worth. As opposed to this testimony, the objector produced R. M. Day, who testified that he offered $5,000 for the note on the very day that Midgley purchased it, on condition that the executor would give him time to raise the money. That he was given from 11:45 in the morning until 3 o'clock in the afternoon, which was not enough for his purpose; that, if he had had more time, he could and would have raised that sum. He further states that the mortgaged property was worth $10,000, but on further inquiry it developed that he did not know what property the mortgage covered, and that his estimate was made upon the supposition that it embraced more than it really did. Some effort was made to ascertain the rentals and the value of certain items with a view to arriving at its value, but the testimony is so indefinite and incomplete that it furnishes no satisfactory basis for intelligent deduction. Upon the whole, we are satisfied that the note and mortgage was disposed of for its reasonable value, and that the executor is not chargeable with any want of good faith, as it respects the transaction.

6. Nor can it be criticised as a compounding of the debt with the debtor. There was no agreement or understanding between the executor and Edris, the debtor, whereby the latter was to receive a discharge upon paying less than the full amount of the demand. There was a sale and transfer of the claim to a third party, and the payor continued bound, so that the elements consistent with the compounding of a debt are entirely wanting.

7. In this connection it is insisted that the executor has admitted, by failing to deny in his reply, that the note and mortgage was at the time of the appraisement and is now worth the sum of $7,284.50, the amount at which it is averred the same was appraised; that he wrongfully sold the same for much less than its real value; that he is thereby precluded from showing anything to the contrary. Preliminarily, a few observations touching the accounting will be pertinent to this

and other inquiries made necessary by the record. The final account should be verified by the executor, who should charge himself with all the property of the estate which may have come into his possession at its appraised value, and he is not to profit by the increase or suffer loss on account of a decrease in value or destruction of the estate without his fault. It should contain a detailed statement of the amount of money received, and from whom, and the amount expended, and to whom paid, referring to proper vouchers for such payments, and the amount of money and property remaining unexpended: Hill's Ann. Laws, §§ 1173, 1177. For matters which the account should contain in detail, the practitioner and accountant may read and observe with profit the opinion of Surrogate McVean in *Re Jones,* 1 Redf. Sur. 263. It would seem that the appraised value, nothing further appearing, is the amount with which the executor should be charged; but it is not conclusive, and it is incumbent upon him, if there has been any loss, to show the cause thereof, so that the court can say that it was incurred without his fault, and thereby be enabled to extend him credit: *In re Jones,* 1 Redf. Sur. 263; *Mussey* v. *Sanborn,* 15 Mass. 155; *Underhill* v. *Newburger,* 4 Redf. Sur. 499; *Ex parte Jones,* 4 Cranch, C. C. 185 (Fed. Cas. No. 7,443).

8. The statute has not prescribed in what the pleadings attending an account should consist, and we know of no rule of practice that has been adopted in this state by which we may be governed. In New York, under a statute of similar trend to our own, it has been held many times that the account and the objections thereto represent the pleadings of the parties, and that the issues to be tried are to be determined therefrom, the objector being required to specify with convenient detail the particular items to which he takes exception, and state any matters of fact attending them upon which reliance is had for attaching liability to the executor: *In re Hart,* 60 Hun, 516 (15 N. Y. Supp. 239); *In re Heuser's Estate,* 87 Hun, 268 (33 N. Y. Supp. 837); *Frame* v. *Willets,* 4 Dem. Sur. 368; *Peck* v. *Sherwood,* 56 N. Y. 615. This seems to be a convenient

40 OR.—10.

practice, and one well calculated to subserve the ends of truth and justice; and we see no good reason for going beyond it and requiring a technical reply of the executor or administrator, whereby he must deny or avoid a matter stated by the objector, as by the rules of pleading adapted to ordinary suits or actions. There is therefore no good reason for holding that the executor has admitted the truth of the objector's allegations by not denying them. The executor having shown that he obtained for the Edris note and mortgage all that they were reasonably worth, he should not be charged with anything beyond the amount received, and it makes but little difference whether it was appraised for that sum or for $7,284.50. If for the latter, he should be charged with the amount in his account and credited with the deficit.

9. We come now to the Conser Block and the Ax Billy store items. It is urged as to those that the executor was without adequate authority to sell in the manner employed, and therefore that the sale should be set aside, or that the executor be required to account for the difference between the sale price and the appraised value. It is not a matter pertinent for inquiry upon a final accounting whether the sales of realty have been authorized and regularly made with a view of determining their validity. The purchaser is not ordinarily a party to the proceeding, nor is there any process by which he may be brought in, and the proceeding is wholly inappropriate for the purpose; so that the suggestion to set aside the sale is without merit. The Ax Billy store was sold at public auction, after giving notice for the time and in the manner as provided by law for sales upon execution, for the sum and price of $5,450. A report was made to the county court, whereby it was shown that the price paid was reasonable; but the order of the court respecting it, while it takes notice of the sale, does not seem to have expressly affirmed it. The Conser Block was disposed of at private sale, and the report thereof shows that the executor had previously advertised the same for sale at public auction in manner as prescribed by law for sales upon execution, but had failed to obtain bidders;

that the price received was not unreasonable; and that another sale would not bring ten per cent. additional and costs There was an order of the court expressly affirming the sale, and reciting, in effect, that the consideration received was reasonable. But slight reference is made to these sales in the testimony. Mr. Hendricks says that he was never offered anything above the figures named for the property, and that the piece of realty sold to Mrs. Warren, the objector herein, was the only cheap piece of property sold, thus leaving an inference that the other property brought at least its approximate value. While the evidence in explanation of the deficits is meager, we are fully satisfied that the property was disposed of for what it was reasonably worth, and that the executor should have credit in his account for such deficits. There is a difficulty attending the matter by reason of the fact that the executor does not attempt in his account to show any cause for the discrepancies between the appraised values and proceeds of sales, or that the property brought all that it was reasonably worth, so as to afford a basis for the credit; but, as there was no objection interposed to the testimony offered on this account, we are warranted in affirming the findings of the court below in allowing credit for the difference.

Some other items objected to may now be noticed in detail. M. L. Hendricks preferred a claim of $206.25 against the estate for cutting fifty acres of brush at $4 per acre, and five days' labor at grubbing at $1.25 per day. This was allowed and paid by the executor, and the objections to it are that there was no such contract, as indicated by the proof, and no service rendered; but the evidence is clear to the contrary, and the credit was properly allowed. Another item is that of the M. L. Coleman claim for $107, allowed and paid, $100 of which is objected to; but the action of the executor was fully warranted in the light of the evidence adduced at the trial. George B. Dorris was allowed $500 for services as attorney for the estate. This was objected to as exorbitant. Attorneys of understanding and experience were called touching the allowance, and fully established its reasonableness. The executor's charge of

$1,000 for the settling of the estate is a matter fixed by the terms of the will. It is insisted that no compensation of the kind should be allowed upon the ground that he wilfully mismanaged his trust, but there is no evidence of this whatever, and the objection is wholly without substantiation. The form of the account is not to be commended, and perhaps a restatement of it should have been required; but, notwithstanding, the county court has settled it, and we see no good reason for disturbing the decree now.     Affirmed.