In the Matter of the Estate of SAM RING, Deceased, PETER
RING, objector to report of A. N. LUND, Administra-
tor, Appellee, v. A. N. LUND, Administrator, Appel-
lant; and A. N. LUND, Claimant, Appellant, v. PETER
RING, objector to claim, Appellee.  MARTIN MOE, Ad-
ministrator.

**Estates of decedents:** LEASEHOLD ESTATES: RIGHTS OF ADMINISTRA-
1  TOR. The leasehold interest of a deceased tenant in real prop-
erty, the crops growing thereon at the time of his death and
those subsequently planted during the term of the lease, save
for some statutory exemptions, are assets of the estate and
pass to the administrator; and he may sell the leasehold inter-
est or hold the same and care for and harvest the crops, and
in the absence of bad faith, or negligence is entitled to his
expenses in so doing.

**Homesteads:** EXEMPTIONS: RIGHTS OF WIDOW. A tenant has a
2  homestead right in the leasehold, which, together with crops
grown thereon subsequent to his death are exempt to his
widow; and she does not waive this exemption by failing to
object to an appraisement which does not set apart to her all
of the property to which she is entitled.

**Claims:** FAILURE TO FILE. Where an administrator neglects to file
3  a claim which he has against the estate within the time pre-
scribed by statute it is barred, and he is not entitled to equi-
table relief upon a simple showing that he did not understand
that it was necessary for him to file his own claim.

*Appeals from Mitchell District Court.*— HON. J. F. CLYDE,
Judge.

WEDNESDAY, NOVEMBER 14, 1906.

THESE are appeals from proceedings in probate; the
first being an appeal by Lund, administrator, from an order
of court, rejecting certain claims made by him for expenses
incurred in administering the estate of Sam Ring, deceased;
and the second, an appeal by Lund who, in his individual

capacity, filed a claim against the estate of said Ring. This claim was disallowed by the trial court.— *Reversed* in part.  *Affirmed* in part.

*C. E. Salisbury* and *G. E. Marsh,* for appellant.

*Eaton & Salisbury,* for appellee.

DEEMER, J.— June 10, 1903, A. N. Lund was appointed administrator of the estate of Sam Ring, deceased, and on September 9, 1904, he filed his final report in which he made a statement of his receipts and expenditures. To some of the items for which he asked credit, Peter and N. P. Ring, heirs of the deceased, filed objections upon the ground that they were unauthorized in view of the fact that he had an opportunity to sell all the property of deceased on July 22, 1903, for full value, to N. P. Ring, which opportunity he refused and neglected to avail himself of. The claim which he filed against the estate, and which is involved in the second case above stated, is for money borrowed by deceased. Claimant was appointed, as above stated, and gave notice of his appointment June 17, 1903. On August 19, 1904, he filed the claim with the clerk of the court and, in his final report, called attention to the matter, and asked that a special administrator be appointed to investigate and report upon the same. October 1, 1904, Lund resigned as administrator, and Martin Moe was appointed as administrator, and on the same day Lund filed a petition for the allowance of his claim, setting out what he deemed to be equitable circumstances excusing his delay in filing and proving his claim. To this N. P. Ring objected upon the ground that the claim was not filed and proved within one year, and asserting that no valid excuse was given for failure to file the claim within proper time. Upon hearing, the objections to the credit items claimed by the administrator were generally sustained, and the claim for borrowed

money was disallowed. Sam Ring died intestate April 25, 1903, without issue, but leaving his wife, Inga Ring, surviving. He was a farmer and, at the time of his death, was, with his wife, occupying a farm of one hundred and fifty-five acres which he had rented from year to year. Upon that farm he had horses, cattle, hogs, and farm machinery, and, at the time of his death, had sowed barley and oats upon fifty acres of the land. After his death, his widow and heirs and personal representative planted some sixty acres of corn upon the land. After the appointment of the administrator, the personal property left by the deceased was listed and appraised for about $1,100; the appraisement covering the corn, oats, and barley and all the personal property save a list set apart to the widow, which was valued at $199. The appraised list also included one hundred and fifty bushels of oats for feed which, it seems, was also set apart to the widow as exempt, valued at $40 and a wagon and double harness and a miscellaneous lot of tools valued in the aggregate at $104.

On the 15th day of July, 1903, the administrator made application to the court to sell the personal property of the estate as soon as fit for the market, for the reason that feed was scarce and hard to obtain, and on the same day the application was granted, the property to be sold for not less than its appraised value. It seems that of the forty acres upon which the buildings and improvements were situated, ten or eleven acres were in oats, and about twenty acres in corn. On July 22, 1903, one Peter Ring offered the administrator $1,200 for the personal property of the deceased, consisting of crops, grain, cattle, hogs, etc., upon condition that the widow would give him the use of her machinery. The administrator submitted this offer to Mrs. Ring, and she said that if he, the administrator, was not compelled to make the sale, she preferred that he would not do it. This was reported to Ring, and his offer was refused. The corn was put in by the use of the widow's

horses and machinery and the oats and barley were harvested by the use thereof, and help was employed by the administrator in putting in, caring for and harvesting some of the crops.   On October 1, 1903, the administrator sold all the personal property of the estate to the widow for $1,-200.   In his final report he charged himself with the proceeds of this sale and some other items not in controversy, amounting in the aggregate to $2,237.40.   He asked credit for $1,192.13 paid out and charged himself with the net balance of $1,042.27.   In an amendment to the report he asked that the court fix and allow a reasonable sum for his services.   The principal objections to the report were in the following language:

(1)   To charges against said estate shown by vouchers Nos. 1, 12, 14, 15, 16, 17, 21, 22, 24, 27, 28, 29, on the ground that the said Peter Ring on July 22, 1903, offered the said Lund, administrator, for the personal property, belonging to said estate, the sum of $1,200, and offered on that day to take charge of said property, cutting the grain, harvesting the same, caring for the cattle, and save all further expense in caring for said property after that date. That many of said items objected to were on account of expense incurred subsequent to said date and in caring for said property.   That many of the items consisted of expense of harvesting, stacking, and threshing grain.   That at least a part of the expense in hired men and help to care for said grain and property could have been avoided if the offer of this objector had been taken at the time it was made; that this objector offered to pay said sum of $1,200 to said Lund, and that the said charges and expenses, incurred subsequent to said date, are not legal charges against the estate.   (2) Objection is made to the amendment to the report on the ground that the compensation for which said administrator asks is in part based on work that he claims to have done in caring for the said estate after July 22, 1903.

The trial court disallowed items amounting to $227.66 and allowed the administrator as and for his compensation the sum of $40.25, and ordered him to turn over to Moe, the

administrator appointed in his stead, the sum of $169.87 in addition to the balance already turned over of $1,042.27. By stipulation, however, an item for taxes was reduced from $37.03 to $19.53. The items disallowed were for expenses incurred in the management and care of the property after Ring made this offer to take and pay for it.

I. There is no claim that these expenses were exorbitant, or that they were not necessary in the event it be found that the administrator was justified in refusing the offer made by Ring. The contention on the part of the objector is that the administrator was guilty of negligence or bad faith in not accepting this offer, and that he should not be allowed anything for the care and management of the property after this offer was made. The administrator denies any bad faith or negligence in the matter and contends that he had not authority to sell all the property for the reason that part of it did not belong to the estate, that part of it was upon the homestead, and was a part thereof, especially the growing crops, and that in no event could he sell the corn which was planted by the widow and himself after the death of Ring. There is also a general claim that part of the property; that is to say, the leased land and the crops growing therein, was and is realty which passed to the widow and heirs, and that he could not sell the same as part of the assets of the estate. The claims which were disallowed were not claims against the estate, but were part of the expenses of administration, if anything, and if the property was realty, as claimed, the administrator was not justified in incurring the same. And on the other hand, if this be true, he is not entitled to recover anything by way of compensation for expenses incurred in the management thereof. But it is not true that this leasehold interest was realty. It was a chattel real, which, except it be for the homestead part, passed to the administrator as personal property, and he was authorized and required to take charge of it and of

1. ESTATES OF DECEDENTS: leasehold estates: rights of administrator.

the crops growing thereon, and to care for, preserve, and dispose of the same. *Thornton v. Mehring* (Ill.) 25 N. E. 958; *McCormick v. Stephany,* 57 N. J. Ch. 257 (41 Atl. 840); *Rickard v. Dana,* 74 Vt. 74 (52 Atl. 113). Moreover, aside from the question of homestead, all growing and unharvested crops on the land of the decedent at the time of his death, such as are raised annually or periodically by labor or planting, go to the administrator or personal representative as assets of the estate. This is particularly true where the crops are upon a leasehold. *Marx v. Nelms,* 95 Ala. 304 (10 South. 551).; *Humphrey v. Merritt,* 51 Ind. 197; *Penhallow v. Dwight,* 7 Mass. 34 (5 Am. Dec. 21); *McGee v. Walker,* 106 Mich. 521 (64 N. W. 482); *Wadsworth v. Allecott,* 6 N. Y. 64. And for like reason crops, planted after the death of a lessee upon leased premises during the life of the lease, belong to the estate unless there be an exemption thereof. Crops, growing upon leased premises at the time of decedent's death, save for some exemption, are assets for the estate and the administrator may sell them as they stand, or he may proceed to care for, cultivate, and harvest them using all the property upon the place belonging to the estate for that purpose. If he concludes to do the latter, he should be allowed his expenses incurred therefor. *Farley v. Hord,* 45 Miss. 96. This involves also the thought that the administrator may, if he so elects, sell the leasehold unless the same or some part thereof be exempt, or he may continue the lease, in any event, being responsible as such administrator for the rents. *Inches v. Dickinson,* 2 Allen (Mass.) 71 (79 Am. Dec. 765). The administrator in this case had an order for the sale of all the property of the estate, but he is not to be held liable merely for the failure to make an opportune sale. *Sunday's Appeal,* 131 Pa. 584 (18 Atl. 931). No liability attaches for mere error of judgment. *In re Conser,* 40 Or. 138 (66 Pac. 607); *In re Worcester,* 60 Vt. 420 (15 Atl. 336).

Generally speaking, an administrator is not held personally liable where he has acted in good faith and with ordinary care and prudence in the management of an estate, and he is not liable for loss or depreciation in the value of the property in the absence of a showing of bad faith or negligence. *Hancox v. Meeker,* 95 N. Y. 528; *Parker v. Glover,* 42 N. J. Eq. 559 (9 Atl. 217). If he acts upon request of the widow or heirs entitled to the property, this will excuse him in the absence of a showing of bad faith. *Ward v. Tinkham,* 65 Mich. 695, 32 N. W. 901. It is generally held that an administrator is entitled to his expenses in caring for crops, etc., upon leased premises. *Edwards v. Ela,* 5 Allen (Mass.) 87; *Tayloo v. Bush,* 75 Ala. 432; *Hinson v. Williamson,* 74 Ala. 108; *In re Smith,* 118 Cal. 462 (50 Pac. 701).

II. We are now brought down to the question of exemption. Under the law all the exemptions allowed to the husband as head of the family shall, upon his death, be set apart to the widow as her property. This was attempted to be done, but not all of the property to which the widow was entitled was set apart to her in the appraisement and the offer made by Ring included part of this exempt property. The widow did not waive her exemption by failure to object to the appraisement. Code, section 4017. The property which was not exempt was appraised at approximately the sum of $900 and the offer of Ring was for all the property which belonged to the estate. It is said that the crops growing and grown upon the homestead forty acres of land occupied by decedent at the time of his death were also exempt, and that the administrator could not sell them. That there may be a homestead in a leasehold interest is well-established law in this State. *Johnson Co. v. Carroll,* 109 Iowa, 571; *Lessell v. Goodman,* 97 Iowa, 681, and cases cited. The homestead passed to the widow, and she was entitled to use and occupy it at least for one year. See Code, section 2985.

2. HOMESTEAD: exemptions: rights of widow.

Whatever the rule as to the annual crops growing upon the land at the time of the decedent's death, the administrator was not entitled to the corn planted upon the homestead forty acres and grown by him and the widow after the death of the husband. So that the administrator had no right to sell Ring the corn growing on this forty acres.

Aside from all this, however, the widow, who owned a part of the property which Ring proposed to buy and who was to take one-half of all the property left after the payment of debts, by reason of there being no issue, objected to the sale to him, Ring, and there is no evidence of any bad faith, either on her part or upon that of the administrator. This, in itself, under the rules above stated, was a sufficient excuse for not selling the property to Ring. The only evidence of bad faith on the part of the administrator is that he thereafter sold the property of the estate for $1,200 to the widow, and it is said that this was the same property which Ring offered $1,200 for some three months before. But it does not sufficiently appear that it was the same property. Indeed, it was not the same, for the widow, of course, did not buy and pay for her own property when she purchased. The administrator undoubtedly made a good sale to the widow. All the nonexempt property, including all the corn then growing upon the land, was appraised at about $900. The administrator received $1,200 therefor and his expenses which were disallowed, not including taxes, amounted to about $200.

We are constrained to hold that the court was in error in disallowing the expenses incurred in the management and care of the property after Ring made his offer. There is difficulty in stating the account correctly because of expenses incurred to some extent, at least, in the management of the homestead property. The trial court found that the administrator, Lund, had turned over to his successor the sum of $1,042.27, allowed him $40.25 for his services, but disallowed claims amounting to $227.66, the net result of which,

was an order that the administrator pay over to Moe, his successor, the further sum of $169.87. We are of opinion that as the administrator has turned over the amount stated, and has had no compensation for his services that nothing further should be demanded of him. The larger part of his expenses was for the care of property belonging to the estate, and we believe that justice will be done by allowing him in toto for compensation and expenses, the amount found due by the court, to wit, $169.87. This will balance his account and leave him without anything for compensation. The result is that his final report should be approved, and he discharged as administrator.

III. As to his claim against the estate. This was disallowed because not filed in time, and there was no showing of any equitable circumstances entitling him to relief. We must assume for the purposes of the case that the claim is a valid one for the sum of $165, and it also appears that the estate is unsettled. The only reasons given for not filing the same within the year as required by statute we quote from the testimony of the claimant as follows:

8. CLAIMS: failure to file.

At the time I was appointed administrator I did not know or understand that claims were to be filed before payment made. My understanding was to examine a claim and satisfy myself as well as I could that it was a just debt against the estate and if I found that it was, that I was empowered to pay it. During the first year after my appointment, I did not understand that my claim against the estate was different from any other party or creditor. I did not know that a claim in my own behalf was not to be treated like a claim in behalf of any other creditor until the claim marked " Exhibit 1 " was made out. Prior to that time I did not know that it was necessary that a special administrator be appointed to act on my claim. . . . After my appointment as administrator and during the year following and until July 21, 1904, I considered the $165 as an item which I was to receive credit for at all times or when I was making my report I supposed, and

understood and believed at all times prior to that date that the amount owing me would be deducted from what I owed on settlement of the estate. . ` . . - did not have an attorney when I became administrator of the estate. I cannot say when I employed Mr. Marsh as attorney. I did not advise with him about claims against the estate. I received written evidence from clerk of my appointment as administrator. I have had it ever since in my possession. I don't think that I read it. I think I noticed to some extent on that blank printed directions to administrators and executors. I could not say how much I read of it. I may have read it all.

It also appears that letters of administration were issued to claimant which clearly stated that all claims should be sworn to and filed and, when filed, should be approved by the administrator. These letters also stated that all claims not filed within twelve months were forever barred. Claimant was himself the administrator of the estate, and has only himself to blame for not filing his claim. His mistake was purely one of law, and due wholly to his own neglect. His only excuse is that he did not think it necessary to file claims. Surely, that is not an equitable circumstance which will justify the relief sought. *Colby v. King,* 67 Iowa, 458; *Cory v. Gillespie,* 94 Iowa, 350; *Ferrall v. Irvine,* 12 Iowa, 54; *Roaf v. Knight,* 77 Iowa, 506; *In re Jacob's Estate,* 119 Iowa, 176; *Mosher v. Goodale,* 129 Iowa, 719. The trial court was right in dismissing the claim.

The result of the whole matter is that in the first case the order and judgment of the court must be reversed, and the cause remanded for one in harmony with this opinion; and in the second cause, that the order and judgment, dismissing the claim, is right, and should be affirmed. Appellant will pay one-fourth and appellee three-fourths of the costs of this appeal.

*Reversed* in part, and *affirmed* in part.