Argued March 28; reversed October 7, 1930

In re Fehlmann's Estate
HOFER *v.* GOFNER et al.

(292 P. 1029)

*J. W. McCulloch* and *P. J. Gallagher,* both of Portland (J. W. McCulloch, Gus C. Moser, and Gallagher & Conway, all of Portland, on the brief), for appellant.

*Peter A. Schwabe* (with Charles T. Haas of Portland on the brief) for respondents.

BROWN, J. ■ This record embraces appeals from two orders made by the circuit court for Multnomah county, Oregon, probate department, in the matter of the estate of Robert Fehlmann, deceased. One appeal is taken from the order of removal of the executor of the estate, granted upon the petition of the residuary legatee under the will, and the other from the order rejecting the final account filed by the executor therein. The parties litigant have filed a stipulation for the consolidation of the two cases at the hearing; and, for the reason that both proceedings were brought upon the same set of facts, the merger by consolidation is peculiarly fitting: 5 Stand. Ency. of Proceed., pp. 272-275; 4 Ency. Pl. & Pr., pp. 701, 702.

In this opinion we shall take up the question of the removal of the executor; the other question being discussed in a separate opinion. [See post 45.]

The facts necessary to a determination of the issues presented are substantially as follows:

Robert Fehlmann died testate, in Portland, Oregon, on May 10, 1928. On May 24, 1928, Robert G. Hofer, a cousin of decedent, filed a petition in the circuit court for Multnomah county, probate department, praying that the last will and testament of the decedent

be admitted to probate, and that the petitioner be appointed executor of the will as provided therein. On June 9, 1928, the will was admitted to probate, and the petitioner was appointed to serve as executor thereof, without bonds. On July 3, 1928, the court made an order appointing Webster L. Kincaid, J. W. Crossley, and George McCulloch as appraisers of the property of the estate. The property was appraised, and on December 18, 1928, Kincaid and McCulloch filed an inventory of all the real and personal property of the estate, which represented the estate to be of the total value of $12,600. Among the items appearing in the inventory are the following:

"Mortgage note of Chas. B. Andrews and Marie H. Andrews, date 6, 1925, with interest at 7 per cent per annum, face of note $2,000, secured by mortgage on Lot 3, Block 4, Riggs' Addition, No. 7328, 54 Ave. S. E., $1,500.

"Note of ———, for $6,000, secured by mortgage on 25 acres land at Beaverton, Oregon, $6,000."

On December 22, 1928, the executor first published, in "The Sunday Welcome," at Portland, a notice to creditors. On January 29, 1929, he filed a petition for an order to sell the $6,000 note above described. Based upon the petition the court entered an order for the sale of this note and mortgage and directed the sale thereof for $4,500, and, on February 4, 1929, made an order approving the sale of that property. On June 6, 1929, Louise Fehlmann, residuary legatee, filed a petition for removal of the executor, citing as grounds therefor seven instances. She alleges that the executor has not been faithful to, but has neglected, his trust, in that he has failed to file, within the time required by law, a proper inventory and appraisement showing the assets of the estate and the value thereof, or any

appraisement at all wherein it appears that all of the
three appraisers appointed by the court have joined
therein; that he has failed to file the semi-annual
account required by law to be filed within the first ten
days of April and October of each year, or any account
whatever of the doings of the executor of the estate;
that he has failed to publish notice to creditors within
the time prescribed by statute; that he has deceived the
court in his petition for order to sell personal property
of the estate, i. e., the $6,000 note above set out; that,
on February 4, 1929, he filed an application for order
approving sale of personal property, stating that the
sum of $4,500 was the best offer obtainable for the
above-described note and mortgage, and that the court,
on that day, entered an order approving the sale. She
alleges that the proceedings taken by the executor in
the matter of the sale are ''null and void in that they
contain no adequate information by which said note
and mortgage may be identified.'' She further states
that she has, on many occasions, requested the executor
to render her an accounting relative to the assets of
the estate and the value thereof, but that he has refused
to account to her. She concludes by alleging that ''said
Robert G. Hofer is not a fit and competent person to be
executor of this estate, and that he should be removed.''

The law relating to the removal of the administrator
or executor of an estate has been stated from time to
time by this court, and is well settled. In the early
case of *Re Barnes' Estate,* 36 Or. 279 (59 P. 464), it
was said:

''The statute provides that an executor or admin-
istrator may be removed upon the application of an
heir, legatee, devisee, creditor, or other person inter-
ested in the estate, for unfaithfulness or neglect of his
trust, to the probable loss of the applicant (Hill's
Annotated Laws, § 1094), and the court may, for like

cause, upon its own motion, remove such officer (Hill's Annotated Laws, § 1100) : *In re Partridge's Estate,* 31 Or. 297 (51 P. 82).

"When, therefore, the appellant, in obedience to a citation regularly issued, appeared, admitting his delinquency, and submitted to the court the sufficiency of his excuse for the failure to discharge the duties of his trust, it became its duty to determine whether he should be removed or not, and its decision in that regard will not be reviewed on appeal unless abuse appears: *In re Holladay's Estate,* 18 Or. 168 (22 P. 750) ; *McFadden v. Ross,* 93 Ind. 134; *In re Graber's Estate,* 111 Cal. 432 (44 P. 165) ; 1 Woerner Adm'n, 572.

"The law makes it the duty of the administrator immediately after his appointment to publish a notice requiring all persons having claims against the estate to present them with the proper vouchers within six months from the date of such notice (Hill's Annotated Laws, § 1131), and also to file an inventory of the property belonging to the estate which shall come into his possession or knowledge within one month after the date of his appointment, or such further time as the court or judge may allow (Hill's Annotated Laws, § 1112)."

We do not depart from the holding above noted. However, in the case at bar, a situation essentially different is presented, in that the estate had been fully and fairly administered before the institution of proceedings for removal. Moreover, in the cause at issue, the executor acted with the consent, advice and assistance of the petitioner's attorney in fact in all matters relating to the administration of the estate.

The record herein shows that, on June 22, 1928, the petitioner made, executed and delivered to P. O. Brandenberger, Swiss consul, of Portland, Oregon, a power of attorney, appointing him her true and lawful attorney, for the following purpose:

"For me and in my name, place and stead, to do any and all things which he may deem necessary or proper

to protect or preserve my interest in any and all matters connected with or growing out of the death of my brother, Robert Fehlmann, who died at the age of 57 years on May 10, 1928, at Portland, Oregon; and particularly to collect from the executor of the estate of said decedent according to the will of my brother any money due or to become due under said will * * *; and I authorize and request said P. O. Brandenberger to advance and pay for me such sums as he may from time to time deem necessary or advisable, and I hereby give and grant unto him an interest in the subject-matter hereof, also giving my said attorney in fact the right and power to substitute any person whom he may deem competent to act in his stead on my behalf, preserving and granting to said person or persons any and all powers which are herein given to my said attorney in fact; * * * and giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as he might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that his said attorney or his substitute shall lawfully do or cause to be done, by virtue thereof.''

■ With reference to the sale of the $6,000 note and mortgage, the petitioner says:

''It was entirely unnecessary and evidence of bad faith to attempt the sale of such note and mortgage at a discount of 25 per cent, and thus cause a loss of $1,500 to the estate and petitioner's inheritance as residuary beneficiary; had said executor informed the petitioner of his plans and intentions herein, your petitioner could have readily made arrangements to obtain the necessary cash with which to defray the debts and claims against said estate and cost of administration.''

This is a serious accusation, and one not warranted by the record. The petitioner was fully informed by both the executor and her attorney in fact. This note

had been pledged to a bank at Beaverton as collateral security for a loan of $2,500 which the decedent had reduced in his lifetime to $1,700. The bank was pressing the executor for payment of the balance due. The attorney in fact for petitioner testified that when he learned this fact he advised the petitioner as follows:

"After this I went out to Miss Fehlmann's out at Beaverton and told her about it, and she says, 'Well, if we got to let it go for $4,500, just as well let it go to the man next door or the man across the street; let him have it at that price'; and I told her, 'Miss Fehlmann, you have got money on hand, why not pay the bank off and keep this $6,000 mortgage for your benefit? If you want me to, I will go and talk to them about it.' 'Oh, no, no. I don't want anything to do with it; nothing to do with it—it is all right—all right, let it go'; and that is the way it went. What could I do? There was nothing else I could do, and so I went off again."

He further testified:

"Q. Yes; going back, now; you suggested to Miss Fehlmann that she take her own money and pay off the Bank of Beaverton?

"A. I did.

"Q. And keep the $6,000 note and mortgage herself?

"A. That's what I wanted her to do.

"Q. And what did she say about it?

"A. Just what I have repeated here.

"Q. She didn't want to do it?

"A. She didn't want to do it.

"Q. What did you tell Hofer about going ahead and closing the deal up on that basis?

"A. I told Mr. Hofer that 'I can't do nothing with the party; the only thing I can say is to go ahead.'

"Q. And you were then telling him what Miss Fehlmann had told you?

"A. Yes, I did.

"Q. And at that time you were acting under the power of attorney that is on file in this case?

"A. I did."

The executor testified that he consulted with petitioner's attorney in fact about practically everything in connection with his transactions in the estate. He stated that he likewise discussed the matter of the sale of the $6,000 note and mortgage with the petitioner, and when asked as to the result of that discussion, he said:

"A. It was—I couldn't say. She speaks German, and I was born in Switzerland and speak a little German, but very little, and it was hard to make her understand, and I really arrived at no   *   *   *   no satisfaction whatever."

He further testified that during all the time of the negotiations leading up to the sale of the $6,000 note, the petitioner's attorney in fact was acquainted with the situation and advised that the sale be made.

■ Mrs. Powell, the owner of the 25-acre tract of land upon which the $6,000 mortgage was a lien, testified that she had obtained this tract on a trade; that she had been offering it for sale for "the past four years," and that the best offer she could get was $200 an acre, likewise on a trade. She further testified that she had worked for three weeks before she finally obtained the loan of $4,500 with which to renew the mortgage. Obviously, this woman knew more about the value of the land in question than did any other witness. Moreover, it is common knowledge that real estate values have diminished greatly during the past several years.

■ The executor herein is not accused of fraud, nor has he been guilty of any fraudulent act in the administration of the estate. It can be said of him, however, that he was dilatory in the matter of reporting the performance of his duties as provided by statute. In brief, the record presents a case wherein the executor has gone ahead honestly and in good faith, with the

intention of administering the affairs of the estate of decedent as he (the executor) would have carried on his own affairs. Unfortunately he carried on without consulting the statutory requirements as to filing reports of his doings as such officer. He knew that an inventory and appraisement of the property was required, but he little dreamed that time would be declared to be of the essence of the statutory rule, or that the concurrence of the minds of two of the three appraisers would not answer statutory requirements in determining upon the value of the estate. We find that the claims against the estate were not in proper form when presented, in that they were not properly verified as provided by law. It is but fair to observe, however, that every claim was thoroughly investigated by the executor prior to its payment, and a receipt taken by him from each and every claimant when payment was made. Nor did the executor, within the first ten days of October, 1928, and April, 1929, render his verified account showing the moneys received and expended by him as provided by § 11-701, Or. Code 1930. But, by his final account and report, he comes into court and shows an honest disposition of all property of his cousin's estate received by him as executor thereof.

■■ This is not a proceeding to punish the executor. On the other hand, it is asserted that it is prosecuted to protect the estate. While it is the duty of the court to protect carefully the interests of estates, the rights of those appointed to take charge of and manage them should not be overlooked, and the administrator or executor should not be removed except for good and sufficient cause. The bulk of this estate was bequeathed and devised to the petitioner herein as residuary

legatee, and it is proper to observe that the removal of the executor would not affect the value of her inheritance a dollar. Negligence alone is not a statutory ground for the removal of an executor; but the statute does prescribe the removal of one "who has  *  *  * been unfaithful to or neglected his trust, to the probable loss of the applicant": § 11-217, Or. Code 1930. The charge of the petitioner herein that the executor has been unfaithful to his trust is not warranted by the facts adduced; and any negligence properly attributed to him has not resulted in any loss to her.

In the proceedings for removal in this case, both the petitioner and the trial court seem to have acted upon the theory that the inventory filed by the executor was null and void. Counsel for petitioner urged at the hearing that—

"There is no inventory. The one on file is absolutely null and void. It says there is a residence in Beaverton. There are about six hundred houses there. It gives no legal description of any of it. The same thing is true of this note and mortgage that is true of everything else, entirely apart from the fact that the inventory and appraisement is absolutely void and worthless for the reason that the court appointed three appraisers in compliance with the law and only two of them have signed it. And there is only one thing to do, if the court permits this estate to be closed up the way they are attempting to close it up. Now, when Mrs. Fehlmann attempts to dispose of that property, they are either going to have to probate this estate all over again or  *  *  *

"The Court: I am inclined to think that there is merit in what you state about the title to that piece of property,  *  *  * on account of the defective appraisement."

On page 26 of the manuscript entitled "Hearing on Removal of Executor," there appears the following

declaration of the court as to the particular ground for removing the executor:

"On one ground, that he has filed no inventory and appraisement. It is true there is an attempted inventory and appraisement, but there is no legal inventory and appraisement. That alone is a sufficient ground."

■ As to the primary importance of the inventory, both the court and counsel are in error. While the law requires an inventory of the property of the decedent, neither the fact that such instrument was not filed within one month after the appointment of the executor nor the further fact that it was signed by only two of the three appraisers appointed by the court will render it fatal. The law with reference to time is aptly stated in 2 Bancroft's Probate Practice, § 516, p. 945, as follows:

"A statutory requirement that the inventory and appraisement 'must' be made and returned 'within three months' after appointment of the representative is, as to the time fixed, directory, and does not render inventories invalid because filed subsequent to the time fixed."

A valuable discussion by our court with relation to the filing of an inventory and appraisement, among other things, appears in the case of *Conser's Estate,* 40 Or. 138 (66 P. 607). There, as here, various objections were interposed to the final account. In that case it was asserted that the executor had failed to file a proper bond or to take an oath faithfully to fulfill his trust, and had failed to publish notice to creditors or to file proof of the same, and that "he failed to inventory all the property and have it appraised as the law requires." Concerning these objections the court, speaking through Mr. Justice WOLVERTON, said:

"The statute requiring such notice [notice to creditors] is for the benefit of those having claims against

the estate, that they might thereby be informed of the appointment of the executor or administrator, and of the time and place for the presentation of their demands to him, and is in no sense a prerequisite to his entering upon the discharge of his duties. Hill's Annotated Laws, § 1131.

"The objector is not a claimant within the meaning of this provision; but, if she is, it is not apparent that she has been injured by the executor's imperfect compliance with the statutory requirements, and hence she can not be heard to urge such objection against the settlement of the final account. This being so, it is unnecessary to consider whether the notice was filed in time, or the proof of publication properly made. If loss or inconvenience has befallen a claimant because of the irregular action of the executor in this regard, then the question might be pertinent; otherwise not.

"Much criticism is directed against the inventory. * * * The statute makes it incumbent upon the executor or administrator, within one month after his appointment, or such further time as the court or judge may allow, to make and file an inventory and appraisement of the property of the estate. * * * The manifest object of the inventory and appraisement is to preserve a record of the property, and ascertain and determine its value, and the executor is properly chargeable, primarily, therewith at the value fixed. Undoubtedly, these provisions should be substantially observed; but, if they are not, provisions are elsewhere made by which the executor may be required to give proper heed to them. * * * The fact of a nonappraisement of certain property of the estate could not affect the validity of the final account if all the property received, or which by reasonable diligence should have been received, has been punctiliously accounted for. If there had never been any inventory or appraisement, and the executor had faithfully and economically administered the whole estate, or had fully and fairly accounted therefor, he would be entitled to an order settling his account and to a discharge. He may have been put to the trouble of showing the values with

which he should be charged, but it would not affect the jurisdiction of the court to allow and settle his account.''

■ It is clear from the record in the instant case that the inventory was made by the three appraisers appointed by the court, but that one of such appraisers failed to sign. Be that as it may, all property of the testator was set out in the inventory and appraisement, and the executor has completed the administration of the estate, fully and fairly accounting therefor, and no useful purpose could be served by his removal.

For the reasons above stated, the order of removal must be reversed. Neither party will recover costs in this court.

Coshow, C. J., and Bean and Belt, JJ., concur.